623 So.2d 551 (1993)
Jeffrey Catine GIBBS, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1015.
District Court of Appeal of Florida, Fourth District.
August 11, 1993.
Rehearing Denied September 14, 1993.
*552 Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Melvina Racey Flaherty, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Appellant was charged by information with (1) armed sexual battery, (2) armed kidnapping, (3) armed robbery,[1] (4) aggravated assault, and (5) battery. He tried several times unsuccessfully to discharge his court-appointed counsel, specifically on April 23, 1990, June 25, 1990, August 31, 1990, and September 14, 1990, and to obtain counsel not from the public defender's office. Although the trial court ordered the public defender's office to switch attorneys after the April 23, 1990 hearing, it refused to appoint other counsel.
At trial the victim testified that on January 1, 1990, she walked to the store to get some cigarettes and on her way home saw two people coming toward her. One of them went to the other side of the street and the other, the appellant herein, approached her and asked for a cigarette, then for a light and then for her to hang on to the cigarette for him. Appellant was wearing an open fishnet tank top, yellow printed shorts, knee socks and high top sneakers, hat and gloves. He reached into the crotch area of his shorts and she heard her boyfriend approaching from behind. Appellant told her to get rid of her boyfriend or he would hurt them. He said he had a gun but she never saw it. Her boyfriend had been drinking and she told her boyfriend that they were going to meet appellant's girlfriend. Her boyfriend did not discern what was happening and he walked off.
Appellant took her by the hand and placed a hard object against her side but did not keep the object there. She was afraid but tried to act calm. He led her a distance and then behind the back of a commercial building where he committed the sexual assault. He threatened to slit her throat. After the act, appellant seemed then to be behaving as if she were not there, so she put her clothes on and ran. She found the police and reported the crime. Appellant was arrested several days later, leading to this prosecution.
The jury found appellant guilty of sexual battery with a firearm, kidnapping with a firearm, aggravated assault with a knife, and *553 battery. The trial court adjudicated him guilty and sentenced him to consecutive terms of life imprisonment on the counts of sexual battery and kidnapping, ten years on the aggravated assault, and one year on the battery. Appellant appeals his judgment and sentence to this court and while we have considered the eight points he raises, we feel it necessary to discuss only five of them.

I
Appellant argues first that the trial court failed to conduct an inquiry into counsel's effectiveness. We disagree and conclude that the trial court complied with the procedure set forth in Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), approved, Hardwick v. State, 521 So.2d 1071 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). A fair reading of the transcript of hearings held on April 23, 1990, June 25, 1990, July 25, 1990, August 31, 1990, and September 14, 1990, supports the trial court's actions in sorting out the wheat from the chaff.
Similarly, we find no merit in appellant's second point on appeal; namely, that the trial court erred in not conducting a hearing pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Appellant informed the trial court on July 25, 1990, that he did not believe  not having finished high school  that he was capable of representing himself. On August 31, 1990, appellant stated as follows:
He ain't my lawyer. I hate this lawyer here. I'd appreciate you getting him off my case, or go to trial by myself.
We do not find that the above statement, taken in context with the prior and subsequent proceedings, constitutes a clear and unequivocal request for self-representation so that he waived his right to counsel and invoked his right to self-representation.
A criminal defendant has both a constitutional right to representation by counsel and a constitutional right to self-representation. To accommodate both of these rights simultaneously, the Eleventh Circuit has held that the right to counsel is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does not attach unless and until it is asserted. Marshall v. Dugger, 925 F.2d 374, 376 (11th Cir.1991); Stano v. Dugger, 921 F.2d 1125, 1143 (11th Cir.) (en banc), cert. denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991).
The requirement for an effective assertion of the right to self-representation is that the defendant must affirmatively state his desire to proceed pro se. The right of self-representation must be manifested to the trial court by an oral or written request in order to trigger the requisite examination by the court under the reasonable person standard. Marshall, 925 F.2d at 377; Stano, 921 F.2d at 1143.
As noted in Marshall and Stano, there is no precedent in the Eleventh Circuit for proceeding pro se by constructive notice without an obvious assertion of the right to self-representation. Marshall, 925 F.2d at 377; Stano, 921 F.2d at 1144. Although a defendant does not need to recite some talismanic formula to open the eyes and ears of the court to his request, Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir.1986), cert. denied, Dugger v. Dorman, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 801 (1987), it is necessary that a defendant clearly and affirmatively express a desire to represent himself in the proceedings.
In an analogous case, Reese v. Nix, 942 F.2d 1276 (8th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1220, 117 L.Ed.2d 457 (1992), Reese claimed in a post-conviction proceeding that the trial court violated his right to self-representation when it ignored his statement, "Well, I don't want no counsel then." Id. at 1279. As in the instant case, Reese's remark was an isolated, offhand statement that in the context of the entire colloquy between Reese and the trial court, a reasonable person could have concluded to be an expression of his frustration over the trial court's denial of his motion for substitute counsel rather than an invocation of his right to self-representation.
Similarly in Jackson v. Ylst, 921 F.2d 882 (9th Cir.1990), the Ninth Circuit found Jackson's request for self-representation untimely *554 and not unequivocal. It further found the record demonstrated that his request for self-representation was an impulsive response to the trial court's denial of his request for substitute counsel. Jackson stated as follows:
Hey, I don't see why [the motion for substitute counsel] isn't granted. I'm doing the filing of the motion [for a new trial]. What good is [appointed trial counsel] doing for me now? I want to fight in pro per then. Relieve him and I do this myself.
Id. at 889. The court determined the above comments demonstrated that he wanted to be represented by a different attorney in his efforts to demonstrate that his trial counsel was incompetent. As in the instant case, Jackson did not object to the presence of his appointed counsel at further proceedings, nor did he renew his request to proceed pro se. The Ninth Circuit concluded that Jackson's emotional response when disappointed by the trial court's denial of his motion for substitute counsel did not demonstrate to a reasonable certainty that he in fact wished to represent himself.
Additionally, the factual contrast between the instant case and Dorman, in which the defendant/petitioner, citing Faretta, filed motions pro se and informed the trial court by letters and a motion of his desire to have the public defender dismissed and to proceed pro se, shows that a reasonable person could conclude appellant's one remark was an emotional response to the trial court's refusal to appoint counsel not from the public defender's office. Thus, we hold that the trial court correctly found appellant's one remark did not mandate a Faretta inquiry.

II
We affirm appellant's conviction of armed sexual battery, based on his threats to use a knife, but reverse imposition of a mandatory minimum sentence for this crime, and remand for resentencing in accordance herewith. Section 794.011(4)(b), Florida Statutes (1989), provides:
(4) A person who commits sexual battery upon a person 12 years of age or older, without that person's consent ... is guilty of a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084:
... .
(b) When the offender coerces the victim to submit by threatening to use force or violence likely to cause serious personal injury on the victim, and the victim reasonably believes that the offender has the present ability to execute the threat.
(Emphasis added).
Section 775.087(2), Florida Statutes (1989), provides that a person who commits certain specified crimes while in possession of a firearm as defined in section 790.001(6) shall be sentenced to a minimum term of three years' imprisonment. Although the state correctly notes that a finding of actual possession may be based on circumstantial evidence, appellant argues, and we agree, that not even circumstantial evidence of a firearm exists in the instant case. Appellant focuses on his attire on the day of the sexual battery: a fishnet tank top, shorts, and athletic supporter. He removed the latter two items during the sexual battery.
The victim testified that appellant reached into the crotch of his shorts when he told her he would shoot her and her boyfriend if she did not get rid of her boyfriend. She also testified that she felt a hardness when she and appellant began walking, a hardness she presumed to be a gun. She never saw a gun, a bulge, or anything remotely resembling a gun. As appellant correctly asserts, actual possession of an object designed to fire a projectile is necessary under sections 790.001(6) and 775.087(2). See Bellinger v. State, 514 So.2d 1142 (Fla. 1st DCA 1987); Whitehead v. State, 446 So.2d 194 (Fla. 4th DCA 1984), rev. denied, 462 So.2d 1108 (Fla. 1985).

III
Next, appellant correctly argues that the information is insufficient to charge armed kidnapping; and hence it was error to impose a minimum mandatory sentence of three years on him pursuant to section 775.087, Florida Statutes (1989). Count two of the information, although labelled as being for armed kidnapping, provides as follows:
Informant aforesaid, under oath, further information makes that JEFFREY CATINE GIBBS on or about JANUARY 1, 1990 in the County of Palm Beach and State of Florida, without lawful authority *555 did forcibly, secretly or by threat, confine, abduct or imprison PHYLLIS E. STINSON, against that person's will, with the intent to commit or facilitate the commission of sexual battery and/or inflict bodily harm or to terrorize PHYLLIS E. STINSON, contrary to Florida Statute 787.01(1)(a).
In order for a three year mandatory minimum to apply on a conviction pursuant to section 775.087(2), the state must allege in the information and prove at trial that the defendant possessed a "firearm" or "destructive device" during the commission of the crime. See Peck v. State, 425 So.2d 664, 665 (Fla. 2d DCA 1983).
Although the state initially counters that appellant waived this issue by failure to raise it below, the enhancement of convictions for use of a firearm when the information does not charge use of a firearm is fundamental error. Helmick v. State, 569 So.2d 869, 870 (Fla. 2d DCA 1990). Moreover, the state cannot use the allegation of use of a firearm in another count of the information to support an enhancement. Id.; State v. McKinnon, 540 So.2d 111, 113 (Fla. 1989). Accordingly, we reverse the conviction for armed kidnapping and remand with direction to enter judgment for kidnapping and to resentence appellant in accordance with section 787.01(2), Florida Statutes (1989).

IV
We affirm appellant's conviction of aggravated assault with a knife and sentence imposed thereon. This point on appeal concerns sections 784.011(1) and 784.02(1)(a), Florida Statutes (1989). Section 784.011(1) defines an "assault" as follows:
[A]n intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.
An "aggravated assault" is an assault "with a deadly weapon without an intent to kill or with an intent to commit a felony." § 784.02(1)(a), Fla. Stat. (1989).
In the instant case appellant threatened to slit the victim's throat. As the state points out, the jury could conclude that the victim had reason to believe appellant could carry out his threat. She testified that she believed him and feared him. Just as the second district in Shelby v. State, 541 So.2d 1219 (Fla. 2d DCA 1989), found the threat with an unseen and undiscovered deadly weapon satisfied the requirements of section 794.011(3), Florida Statutes (1985), when the assailant, in order to carry out his assault, informs the victim he has a weapon under circumstances that cause the victim to have reason to believe that the assailant has the ability to carry out is threat, so does the threat in the instant case satisfy the requirements of section 784.021(1)(a), Florida Statutes (1989).
In sum, we reverse appellant's sentence on counts (1) and (2) as to the imposition of the three year mandatory minimum pursuant to section 775.087(2), Florida Statutes (1989), and appellant's judgment and sentence on count (2) as to armed kidnapping and remand for sentencing for kidnapping pursuant to section 787.01(2), Florida Statutes (1989). In all other respects, we affirm.
GLICKSTEIN and WARNER, JJ., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] The jury found appellant not guilty of this count.