WOLF, Judge.
Jimmy Lee Smith (Smith) appeals from a final judgment and sentence where he was found guilty of kidnapping with a weapon, escape with a weapon, conspiracy to commit escape, aggravated assault on a correctional officer (involving the use of a deadly weapon), and depriving an officer of his means of communication. Appellant alleges 1) that there was insufficient evidence to support his conviction for kidnapping, and 2) there was insufficient evidence to support the jury’s finding that a weapon was used or threatened to be used during the kidnapping, escape, and the aggravated assault. We find no merit as to the first contention, and affirm as to that issue without further discussion. As to the second issue, we affirm for the reasons set forth herein.
The state presented the testimony of Vernon Spencer (Spencer), a correctional officer at the Jackson County Jail, who supervised the cell block where appellant Smith was incarcerated. At about 9:00 p.m., Smith approached Spencer through the cell bars, and asked if he could get a mop bucket to clean up some water that had spilled out of the shower. Spencer opened the front cell block door and gave him the mop and bucket. When Smith said he was finished, Spencer unlocked the door to the cell block to retrieve the mop bucket. To his surprise, Smith pushed the mop bucket all the way out, toward the desk. He then stopped and appeared to be headed back to his cell, when Spencer was distracted by something in the cell block. Smith suddenly grabbed Spencer, and placing his right hand on Spencer’s left shoulder and with his head parallel with Spencer’s shoulder, pushed him against the wall.
Spencer testified that Smith held him against the fire extinguisher and held some type of sharp object against the side of his neck. With the unknown object against his neck and his back against the wall, Smith screamed at Spencer, “Shut up or I will kill you.” Spencer admitted he never saw the sharp object or caught any glimpse of a weapon at any time. He testified that Smith “had his left hand placed up side my neck and I didn’t see an object of any type but I could feel some type of point sticking into my neck here. So, I begin getting frightened and afraid.” He first felt the object about 10 seconds after Smith made contact with him. He described it in the following way: “It had to be something with a point to pierce the little hole in my skin”; the object felt like “a little pinch”; and it left a “scratch with a little hole” on his skin where it had been held against his neck. Spencer later received some first aid for the puncture at Jackson County Hospital. Appellant and two other inmates tied and gagged Spencer and locked him in appellant’s cell. Appellant and the other two prisoners escaped from the jail and were apprehended within three hours, less than seven miles from the jail. No weapon was ever recovered.
Smith argued in the trial court that merely showing that the object used was sharp was legally insufficient to classify it as a “weapon”; a fingernail, a pen cap, and a pencil are all sharp objects, but are not considered “weapons” within the meaning of the statute.
To sustain Smith’s convictions for kidnapping with a weapon and escape with a weapon, there must be evidence that Smith displayed, used, threatened, or attempted to use a weapon during the commission of those felonies. § 775.087(1), Fla.Stat. (1991) (emphasis added). To sustain his conviction for aggravated assault on a correctional officer, there must be evidence that he knowingly assaulted Spencer with a deadly weapon without intent to kill, while Spencer was engaged in the lawful performance of his duties. §§ 784.021, 784.07, Fla.Stat. (1991). An assault is defined as “an intentional, unlawful threat by word or act to do violence to' the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.” § 784.011(1), Fla.Stat. (emphasis added).
The term “weapon” is not defined in chapters 784, 775, or 784. However, -it is defined in section 790.001(13), Florida Statutes (1991), as “any dirk, metallic knuckles, slung-shot, billie, tear gas gun, chemical weapon or device, or other deadly iveapon except a fire *126 arm or a common pocketknife.” (Emphasis added). The courts of this state have generally held that the definition in section 790.001(13), Florida Statutes, may properly be utilized where the defendant is charged with an offense that contains no definition of weapon. See, e.g., Butler v. State, 602 So.2d 1303 (Fla. 1st DCA 1992); Arroyo v. State, 564 So.2d 1153 (Fla. 4th DCA 1990).
The state may prove that a defendant carried, displayed, used, threatened, or attempted to use a weapon during the commission of a felony by means of circumstantial evidence. T.T. v. State, 459 So.2d 471 (Fla. 1st DCA 1984); Gibbs v. State, 623 So.2d 551 (Fla. 4th DCÁ 1993), rev. denied, 630 So.2d 1099 (Fla.1993). In Shelby v. State, 541 So.2d 1219 (Fla. 2d DCA 1989), the court found that in those cases where the statute requires the threat of the use of a deadly weapon, the evidence may be sufficient even if the weapon is unseen and never discovered. In Gibbs v. State, 623 So.2d 551 (Fla. 4th DCA 1993), the court held that while the threat to use a gun was insufficient to support imposition of a mandatory-minimum sentence for actual possession of a firearm during the commission of a felony pursuant to section 775.087(2), Florida Statutes (1989), the threat to slit the victim’s throat coupled with placing a hard object at the victim’s side was sufficient to support a conviction for aggravated assault based upon the threatened use of a deadly weapon.
In Fletcher v. State, 472 So.2d 537 (Fla. 5th DCA 1985), the fifth district held that placing a cold hard object against the victim’s throat and stating that it was a razor blade was sufficient to support actual possession of a deadly weapon even though the victim did not see the object.[1]
In Shelby, supra, the court held that the mere representation by the defendant that he had a gun in his pocket was sufficient to support a charge of sexual battery while using or threatening to use a deadly weapon.
In the instant case, each of the challenged offenses may be proven by threatened use as well as actual use or possession of a deadly weapon. While the victim could not see the object held to his throat, such an identification is unnecessary in a ease involving the threatened use of a deadly weapon. Shelby, supra. The threatened use by the perpetrator is the basis of the charge.
We do not believe that the legislature intended to require a sexual battery victim who is verbally threatened with a gun or other deadly weapon to demand proof from the perpetrator of the actual existence of the weapon.
Shelby v. State, supra at 1221. The same rationale may be applied to a corrections officer who is held against the wall by a prisoner with an object pressed into his throat while his life is threatened.
While it may be argued that the statements made in Shelby and Gibbs are more explicit concerning the nature of the object in question, it is unreasonable to assume that when the defendant said, “Shut up or I’ll kill you” as he pressed a sharp object into the victim’s throat, that he was not representing that the killing would be accomplished by use of the object, and that the object was one that was capable of being utilized as a deadly weapon. We, therefore, find that based on a totality of the circumstances, there was sufficient evidence to support appellant’s convictions.
LAWRENCE, J., concurs.
BENTON, J., concurs and dissents with written opinion.

. For a full discussion of case law concerning sufficiency of the evidence in actual possession of deadly weapons cases see Butler v. State, 602 So.2d 1303 (Fla. 1st DCA 1992), and T.T. v. State, 459 So.2d 471 (Fla. 1st DCA 1984).