Jane DOE, Plaintiff,

v.

Ed PAUKSTAT, the School District of Slinger, and West Bend Mutual Insurance Company, Defendants.

Civ. A. No. 93–C–551.

United States District Court,
E.D. Wisconsin.

Sept. 29, 1994.

Robert Elliott, Hausmann–McNally, S.C., Milwaukee, WI, for plaintiff.

W. Ted Tornehl, Borgelt, Powell, Peterson & Frauen, S.C., Milwaukee, WI, for defendant West Bend Mut. Ins. Co.

William E. Callahan, Jr., Davis & Kuelthau, S.C., Milwaukee, WI, for defendant School Dist. of Slinger.

James W. Mohr, Jr., Mohr, Anderson & McClurg, S.C., Hartland, WI, for defendant Ed Paukstat.

## ORDER

TERENCE T. EVANS, Chief Judge.

These cases arise out of the same set of circumstances. The pending motion to consolidate them is GRANTED, and all materials in case 93–C–1395 will be transferred into the file in case 93–C–551. Case 93–C–1395 will cease to exist, and the new caption in 93–C–551 will read:

JANE DOE,

Plaintiff,

v.

ED PAUKSTAT, THE SCHOOL DISTRICT OF SLINGER, and WEST BEND MUTUAL INSURANCE COMPANY,

Defendants.

The plaintiff has used the fictitious name "Jane Doe" in filing both lawsuits because they contain issues that are sensitive to her. Whether or not a fictitious designation is necessary, in light of the discovery that has occurred, is questionable. Nevertheless, I will refer to the plaintiff by her designated fictitious name in this order.

Jane Doe was born on January 30, 1967. During the school year of 1979–80, she was a sixth-grade student at the Slinger Middle School in Slinger, Wisconsin. When the school year started she was 12 years old. Edward Paukstat was Ms. Doe's math and social studies teacher during the 1979–80 school year.

Ms. Doe filed this lawsuit in 1993. When the suit was filed, she was 26 years old. Although she urges six different causes of action in her first complaint,[1] the factual nub of the complaints in both cases is the same. She says that her sixth-grade teacher, Mr. Paukstat, sexually molested her on numerous occasions during the 1979–80 school year.

According to her claims, Mr. Paukstat initiated physical contact with her by rubbing his elbow against her breast on a number of occasions when she raised her hand to ask a question during class. This contact escalated, she says, when Mr. Paukstat began massaging her breasts one day after school. A short time thereafter, Ms. Doe claims that, while alone in a classroom with Mr. Paukstat, he took her hands and placed them on the crotch of his pants. At this point Ms. Doe says she began to cry; when Mr. Paukstat asked her what was wrong, she informed him that she had previously, in so many words, been sexually molested. According to Ms. Doe, after this event Mr. Paukstat engaged in sexual intercourse with her on a number of occasions in the classroom, his van, his home, and other places. Mr. Paukstat denies that any of this activity ever took place.

According to affidavits, by the summer of 1982 Ms. Doe's mother and sister (the sister died in an auto accident in 1992) were aware, to some extent, that Ms. Doe believed Mr. Paukstat had sexually molested her while she was in sixth grade. Then, in April 1986,

---

1. During oral arguments on September 27, the sixth cause of action was voluntarily dismissed by the plaintiff.

allegedly to protect other young girls from Mr. Paukstat's sexual molestations, Ms. Doe (who was 19 in 1986) says she wrote a letter to Kevin Bacon, the principal at Slinger Elementary School at the time, informing him that "[d]uring the 6th grade he [Mr. Paukstat] raped me many times...." Mr. Bacon denies ever receiving such a letter, and he also denies Ms. Doe's assertion that he called her on the phone to discuss the contents of the letter soon after it was supposedly delivered.

Ms. Doe filed her first formal complaint on June 2, 1993. After that date Ms. Doe's attorneys say they discovered documents in the School District of Slinger's personnel record for Mr. Paukstat concerning other incidents of improper physical contact between Mr. Paukstat and female students, including allegations that he touched girls' hair and touched the back of girls' shirts to see if they were wearing bras. This led to the second complaint, in case 93–C–1395, on December 14, 1993. This again is all denied by the defendants.

Partially due to the filing of two separate cases, Ms. Doe's complaints and the various causes of action she is claiming—along with the motions attacking them—are muddled and ambiguous. To clear the matter up, I asked the lawyers for the parties to appear in court on September 27, 1994. They appeared, and we discussed the claims and the pending motions to dismiss and for summary judgment. This decision will resolve the pending motions.

■ The only federal claim in this case is lodged under section 1983. The complaint clearly states a claim under section 1983 against Mr. Paukstat, who, as a teacher, allegedly acted under color of law. Whether or not a section 1983 claim is stated against the School District is not quite so clear.

■ Ms. Doe appears to advance three separate legal theories in support of her section 1983 claim against the School District. Her first theory is that the District is vicariously liable for the unconstitutional actions of Mr. Paukstat. Since vicarious liability does not support a section 1983 action, however, this theory fails. *Monell v. New York City Dept. of School Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

■ Ms. Doe's second theory is that the District owed her a special "duty of care" which it violated when it allowed Mr. Paukstat to allegedly sexually molest her. This theory is given no recognition by the Court of Appeals for the Seventh Circuit in section 1983 actions. In *J.O. v. Alton Community Unit School District 11*, 909 F.2d 267 (1990), the court of appeals held that the affirmative duty which the government owes to certain individuals, such as prisoners and mental patients, does not extend to schoolchildren.[2] Schoolchildren are not helpless—says the court of appeals—in the same way that an incarcerated prisoner or an individual confined to a mental institution is helpless against the state. "[T]he government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises. Whatever duty of protection does arise is best left to laws outside the Constitution, as Illinois has done." *Alton* at 272.[3]

■ Ms. Doe's final legal theory is that the School District of Slinger promulgated policies which allowed sexual abuse to flourish at Slinger Elementary School. The circuit court has implicitly recognized that such a theory can raise a claim under section 1983. In *J.O. v. Alton*, the court of appeals advised the plaintiff that, although claims that a school district violated a duty of care were improper under section 1983, section 1983 could support a claim that the school district promulgated a policy which fostered child

---

2. Although I might find this reasoning (i.e., more protection for prisoners than sixth graders) troubling, I must follow the law as announced by the circuit court.

3. In her response to the defendants' motions, Ms. Doe claims that her confession to Mr. Paukstat of her prior molestation by a different man rendered her so helpless that the State had a duty to

protect her. I do not believe that the court of appeals, consistent with *Alton*, would think that the "confession" rendered her helpless in the same manner that an incarcerated individual is helpless, and thus, even had this particular piece of her theory been presented in the complaint, it would not strengthen her second legal theory.

888

abuse. The court of appeals then remanded the case to the district court to allow the plaintiff to properly replead the action.

> [W]e do not believe that the plaintiffs could never allege sufficient facts to support a section 1983 claim. *See Stoneking v. Bradford Area School Dist.*, 882 F.2d 720 (3d Cir.1989) (recognizing section 1983 cause of action where school administrators enacted policies that allowed child sexual abuse to flourish). Thus, the plaintiffs should have been allowed a chance to replead their complaint....

*Alton* at 273.

At least one other district court in our circuit agrees with my interpretation that the court of appeals has interpreted the due process clause to allow for a cause of action under section 1983 for claims against a school district that allegedly maintains policies fostering child abuse. "The court interprets ... references [by the Seventh Circuit in *Alton*] to *Stoneking* to be an implicit acceptance of the theory of constitutional liability as set forth in *Stoneking*. The court will thus consider the Third Circuit's opinion in *Stoneking* in determining whether plaintiff here has stated a cause of action thereunder." *Doe v. Bd. of Educ. of Hononegah School Dist. 207*, 833 F.Supp. 1366, 1378 (N.D.Ill.1993).

■ The School District of Slinger claims that while *Alton* may provide Ms. Doe with a cause of action, *Alton* also requires that her complaint be dismissed. The School District believes that Ms. Doe's complaint is identical to the defective complaint in *Alton*. However, Ms. Doe's complaint is broader and more detailed than the complaint in *Alton*. It is, I find, distinguishable from the *Alton* complaint.

In *Alton* the plaintiff's complaint failed to even hint at Ms. Doe's third legal theory.

> Reading the complaint as a whole, this language was obviously intended to satisfy section 1983's "color of state law" requirement and, even with a liberal construction of the complaint, does not provide notice that the plaintiffs allege the school defendants promulgated policies that fostered child abuse.... For these reasons, we

will not construe the complaint as alleging that the school defendants were responsible for official policies that allowed the schoolchildren to be sexually abused.

*Alton* at 272 n. 4. Ms. Doe's complaint is different. Liberally construed, Ms. Doe's complaint provides adequate notice to the School District of Slinger of a claim against it for promulgating policies which allowed sexual abuse to flourish. Therefore, she has stated a claim upon which relief may be granted. The School District's rule 12 motion to dismiss is denied. I now turn to the pivotal issue in the pending motions, the pesky matter of the statute of limitation.

■ Mr. Paukstat, the School District, and its insurer, the West Bend Mutual Insurance Company, have filed motions for summary judgment under Fed.R.Civ.P. 56(c). Under the rule, summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." For this burden to be met, the court must construe all the evidence in the "light most favorable to the party opposing the motion." *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir.1976). Before I may grant a defendant's motion for summary judgment I must be convinced that "there can be but one reasonable conclusion.... If reasonable minds could differ as to the import of the evidence, however, [summary judgment] should not be [granted]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ In their motions for summary judgment the defendants assert that Ms. Doe's claims are barred by the appropriate statutes of limitation. Addressing Ms. Doe's federal claim first, I note that Congress has not provided a federal statute of limitation for actions brought under 42 U.S.C. § 1983. As a result, federal courts must apply the comparable state statute of limitation, which in section 1983 actions was determined by the Supreme Court of the United States to be the statute of limitation for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

■ Two Wisconsin statutes of limitation fit the bill here. Section 893.54 provides a 3–year limit for actions "to recover damages for injuries to the person.". Section 893.53 provides a 6–year term for an action "to recover damages for an injury to the character or rights of another, not arising on contract...."

I think the claims presented in this case fit more comfortably under the 6–year statute. *See Gray v. Lacke,* 885 F.2d 399 (7th Cir. 1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). This determination, however, is meaningless in this case. If I adopt the defendants' view, even a 6–year statute won't save the plaintiff's case. ·If I adopt the plaintiff's view, she's in under the 3–year wire. That's because the case turns on when the clock starts to run, not how long it continues. This situation also makes it unnecessary to address any "tolling" issues lurking here as a result of Ms. Doe's claims that she was only 12 years old when Mr. Paukstat abused her.

■ While state law fixes the duration of a particular limitation period, federal law mandates the beginning date, or the date the claim "accrues." *Kelly v. City of Chicago,* 4 F.3d 509 (7th Cir.1993); *Wilson v. Giesen,* 956 F.2d 738 (7th Cir.1992). Ms. Doe claims that her action did not accrue on the date she alleges she was sexually molested because she was not aware of certain injuries caused by these molestations until June of 1991 or later, during 1993.

■ Under federal common law, the date a claim accrues is governed by the federal discovery rule. The federal discovery rule contains a two-pronged test. "[A] claim accrues once the party performs the alleged unlawful act and once the party bringing a claim discovers an injury resulting from this unlawful act." *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1139 (7th Cir.1992), citing *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). So we need an unlawful act under the first prong of the test. Under the second prong of the test the aggrieved ·party must be aware that she is injured and be aware that this injury resulted from the unlawful act.

■ The standard to be used in determining when a party becomes aware of an injury and its causation is that of a reasonable person. A party is deemed to be aware of an injury and its cause when a reasonable person, under the same circumstances, exercising reasonable diligence, would be aware. *Cathedral of Joy v. Village of Hazel Crest,* 22 F.3d 713, 717 (7th Cir.1994).

■ As is evident from the language of the federal discovery rule, before I can determine the date Ms. Doe's claim accrued, I must first determine the injury she claims to have received. "Our first task in determining the accrual date of a section 1983 case is to identify the injury." *Kelly* at 511. Reading Ms. Doe's complaint liberally and construing the facts in her favor, Ms. Doe's complaint alleges two separate constitutional injuries. The first injury allegedly was caused by Mr. Paukstat. The second injury was caused by the School District of Slinger.

Ms. Doe claims that when Mr. Paukstat sexually molested her he violated her constitutional rights. In her complaint she provides a laundry list of rights that he allegedly violated, many of which are nowhere to be found in the Constitution; *e.g.,* "the right to live and exist as a normal human being; ... her right to engage in the common activities and occupations of life...." However, one of the rights she claims he defiled is her right to be free from state-authorized restraints of liberty without due process of law. This right is delineated in the fourteenth amendment of the United States Constitution as interpreted by the United States Supreme Court. It is applicable to state actions through the due process clause of the fifth amendment.

Earlier in this decision I noted that the plaintiff has stated a section 1983 claim against Mr. Paukstat. I said so even though it appears to be a question of first impression in this circuit whether a student may sue a teacher under section 1983 for violating her constitutional rights by sexually molesting her. I found there could be such a claim.

because the question has been addressed by other circuits.

Both the Third and the Fifth Circuits have held that a teacher who sexually molests a child-student has violated the child-student's constitutional rights. "[S]urely the Constitution protects a schoolchild from physical sexual abuse—here, sexually fondling a 15–year old school girl and statutory rape—by a public schoolteacher." *Doe v. Taylor Indep. School Dist.*, 15 F.3d 443, 451 (5th Cir.1994), *petition for cert. filed.* "A teacher's sexual molestation of a student is an intrusion of the schoolchild's bodily integrity not substantively different for constitutional purposes from corporal punishment by teachers." *Stoneking* at 727.

Incidents of corporal punishment have given the Supreme Court of the United States occasion to flesh out the contours of the due process clause. According to the Supreme Court, the due process clause of the fifth and fourteenth amendments

> was intended to give Americans at least the protection against governmental power that they had enjoyed as Englishmen against the power of the Crown. The liberty preserved from deprivation without due process included the right "generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." Among the historic liberties so protected was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security.

*Ingraham v. Wright*, 430 U.S. 651, 672–673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). A teacher's sexual molestation of his schoolchild is clearly an unjustified intrusion on personal security.

Ms. Doe, as a sixth grader back in 1979–80, clearly had a liberty right to be free from sexual molestation by a teacher while in school. Both the School District and her teacher had to honor that right. The violation of that right is, for constitutional purposes, her "injury," at least insofar as Mr. Paukstat is concerned.

So her injury has now been identified. But Ms. Doe waited 13 years before bringing her claim. Is this too long? No, says Ms. Doe, because she only recently "discovered" that she was psychologically and emotionally injured by Mr. Paukstat's conduct. These particular discoveries, she argues, delay the date her claim "accrued." The clock did not start to run, she urges, until 1991 (at the earliest) when she sought professional help and learned for the first time the nature and extent of her injury. The defendants argue, however, that under the federal discovery rule, a plaintiff need not realize all the injuries caused by unconstitutional conduct for a claim to accrue. Rather, the plaintiff must only realize that she received "an" injury as a result of the accused's conduct. *Tolle v. Carroll Touch, Inc.* At the very latest, the defendants say, her claim accrued in 1986. Therefore the claim died, they say, in 1992.

The federal discovery rule, for purposes of determining when the clock on the statute of limitation starts to run, appears to be a bit less generous to plaintiffs than the rule in Wisconsin. In Wisconsin, the statute of limitation begins to run when a plaintiff is "aware of her injury, its nature and who caused it." *Byrne v. Bercker*, 176 Wis.2d 1037, 501 N.W.2d 402 (1993). The federal rule is perhaps best stated in *Burrell v. Newsome*, 883 F.2d 416 (5th Cir.1989)—the claim accrues when the plaintiff "knew or had reason to know of the injury which is the basis of the action." *Also see Wilson*, 956 F.2d at 740.

It is easy to apply a statute of limitation when the case is cut and dried. Most cases—a car hit a pedestrian, an employee was fired, or a newspaper defamed a citizen—present simple questions under applicable statutes of limitation. Even more complicated cases that have resulted in various "discovery" rules are usually simple—the doctor forgot to remove the scalpel when she sewed up the patient 10 years ago, or the drug ingested by a pregnant woman 30 years ago caused cancer in the child born out of the pregnancy. But in this case we deal with something more amorphous. Child abuse, and its effects on the child, are matters of more recent concern. The issue of just when

the victim of child abuse—and in this case it is allegedly serious sexual exploitation by a male teacher of a young girl—should be required by law to pursue remedies in a court of law, presents questions of policy that are not so easily answered. And policy, of course, underpins most questions regarding statutes of limitation.

In *Diliberti v. United States,* 817 F.2d 1259 (7th Cir.1987), the court of appeals for this circuit noted the policy concerns behind statutes of limitation when it quoted with approval the following language from *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259:

> Statutes of limitations ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586 [88 L.Ed. 788] (1944). These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*Diliberti* at 1263.

*Diliberti* involved a suit under the federal Privacy Act of 1974. The plaintiff, a retired lieutenant colonel in the United States Army Reserve, tried to beat the 2–year statute of limitation by arguing that he filed suit in February of 1984 after he physically obtained defamatory material from his personnel file in the spring of 1982. His claim was dismissed because the period of limitations began, the Seventh Circuit held, when he first knew or suspected the existence of the material (in August of 1981) regardless of when he actually saw it.

*Kubrick,* cited in *Diliberti,* involved a physical injury—an infected leg treated with an antibiotic—in a case under the Federal Tort Claims Act. *Railroad Telegraphers,* cited in *Kubrick,* involved rates of pay under the federal Railway Labor Act of 1926. *Tolle,* cited at page ——— of this decision, involved "accrual" of a cause of action under the Employee Retirement Income Security Act (ERISA). *Cada,* also noted at page ———, involved rights under the federal Age Discrimination in Employment Act. *Wilson v. Giesen,* although a section 1983 case, involved the first amendment rights of inmates in an Illinois correctional facility. None of these cases involved the more esoteric issues presented in serious child abuse cases.

The policy statements regarding the federal discovery rule that underpin these federal cases do not tailor well to the area of child sexual molestation with all its attendant damaging physical and psychological attributes. Because they don't, and because I have not found any precise Seventh Circuit law on the point,[4] I conclude that federal law, on the issue of statute of limitation accrual in child sexual abuse cases, should, in cases brought in federal court, be guided by the more generous Wisconsin discovery rule. States, like Wisconsin, have significant experience in sexual abuse cases. Through their children's, family, and civil courts they have years of experience dealing with issues like the psychological injuries attendant to child sexual abuse cases. We in the federal courts can benefit from state law expertise in much the same way that states can learn from our experience in handling accrual issues in pension claims under ERISA.

■ Construing the facts in this case in the light most favorable to Ms. Doe, I find that she has presented an issue of fact as to when her claim against Mr. Paukstat accrued. Mr. Paukstat (and the District), of course, can argue that Ms. Doe knew of her injury in 1986 or before, and she may, relying on Doctor Marc Ackerman, argue that she didn't really know of her injury and damage until 1991 or beyond. The trier of fact will decide when the claim "accrued,"

---

4. *Doe v. Bd. of Educ. of Hononegah School Dist. 207,* 833 F.Supp. 1366, is an Illinois district court case regarding child abuse by a teacher that does not address the point I am discussing.

and the plaintiff will have to pass this test before she can ask the jury to consider whether her constitutional rights (or state law rights) have been violated.

My decision to deny summary judgment for Mr. Paukstat on the federal claim and submit that issue to the jury compels the conclusion that the state law claims be treated in the same fashion.

■■■ As I noted earlier, Ms. Doe has claimed that the School District of Slinger violated her constitutional right by "enact[ing] policies that allowed child sexual abuse to flourish." *Alton* at 273. Such a claim is governed by the same statute of limitation that applied to her claim against Mr. Paukstat. I find that Ms. Doe's claim against the School District of Slinger may have accrued after the accrual of her claim against Mr. Paukstat.

To determine the date Ms. Doe's claim against the District accrued, I must once again apply the two-pronged discovery rule test. The first prong of the test involves the School District's performance of the alleged unconstitutional act. The unconstitutional act alleged by Ms. Doe is the School District's promulgation of a policy that allowed sexual abuse to flourish. By allegedly promulgating this policy the School District violated Ms. Doe's due process right to attend a public school free from such a policy. To have violated Ms. Doe's rights during her sixth-grade year, the School District must have promulgated its unconstitutional policy by that year. Thus, the first prong of the discovery rule test was met by 1980.

Concerning the second prong of the discovery rule, it is not clear when Ms. Doe (again viewing the facts in her favor) realized that actions by the School District injured her. Her claim against the School District involves different acts and different rights than were involved in her claim against Mr. Paukstat. Thus, it is this second realization that is critical to determining when her claim against the School District accrued.

Ms. Doe's cause of action against the School District accrued only when she realized, or a reasonable person exercising due diligence in the same circumstances would have realized, that she was injured by the School District's alleged unconstitutional conduct of promulgating policies that fostered child abuse. It is not clear to me, as a matter of law, when a reasonable person in Ms. Doe's shoes would have realized that one of her constitutional rights had been violated by the School District of Slinger. Indeed, Ms. Doe says she only uncovered certain documents regarding alleged prior misbehavior of Mr. Paukstat after she began discovery in case 93–C–551. Thus, the timing of Ms. Doe's second discovery is a question of fact which can only be properly determined by a jury.[5] It is not appropriate for me to decide this point on a motion for summary judgment.

> Determining the point under the discovery rule at which the running of the limitations period commences is a question for the trier of fact, unless the parties do not dispute the facts and only one conclusion may be drawn from them. In the present case, if the material facts concerning the point at which a reasonable person should have known he was wrongfully injured were in dispute, summary judgment could not be used to resolve the case as a matter of law.

*Kedzierski v. Kedzierski,* 899 F.2d 681, 683 (7th Cir.1990) (citations omitted).

Lastly, aside from her federal claim, Ms. Doe raises a number of state claims against Mr. Paukstat and the School District. In response to these claims, the defendants have moved for summary judgment on various grounds, including their assertion that the claims are barred by the appropriate statutes of limitation. For the reasons I have noted, these motions are denied. Also, questions about whether or not Mr. Paukstat, if guilty of wrongdoing, was acting within the scope of his employment is an issue of fact for trial.

In conclusion, I note that the issue presented in this case is troubling. If I am correct that an issue of fact exists, and if the

---

5. If a trial, when all the evidence on this point is in, discloses undisputed facts and only one reasonable inference, the judge, not the jury, will decide the issue.

plaintiff can successfully sell to the jury her version of that fact, the statute of limitation in child abuse cases may be nullified. That's either good or bad depending on whether one is a victim of child abuse or an innocent person wrongfully accused of child abuse. It is not a bad result if one is a child molester who has to face a less friendly statute of limitations. Whatever the policy concerns should be, and just how this issue should play itself out, will be interesting to see as the attention on child abuse cases grows more intense in the years to come.

For these reasons, all motions to dismiss and for summary judgment are DENIED. The consolidation motion is GRANTED. Case 93–C–1395 is DISMISSED.

SO ORDERED.