**Karl F. WUDTKE and Hope C. Wudtke, Plaintiffs–Appellants,**

v.

**Frederick J. DAVEL, et al., Defendants–Appellees.**

No. 94–2864.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1996.

Decided Oct. 22, 1997.

---

Karl F. Wudtke, Heart Butte, MT, pro se.

Hope C. Wudtke, Shawano, WI, pro se.

Charles H. Bohl, Pamela M. Schmidt, John P. Spector, M. Elizabeth O'Neil (argued), Whyte, Hirschboeck & Dudek, Milwaukee, WI, for Defendant–Appellees, Frederick J. Davel, Shawano–Gresham School District, Kathryn Cantwell, William Matthias, Michael Robbins.

W. Patrick Sullivan (argued), ·Robert W. Huff, Godfrey, Braun & Hayes, Milwaukee, WI, for Defendant–Appellee, Thomas Bartel.

J. Edison Woods, Jr., Aschenbrener, Woods, Lama & Schmid, Shawno, WI, for Defendant–Appellees, John Syndergaard, Valley Bank of Shawano.

Harvey M. Sheldon (argued), Kathryn T. Ditmars, Jillisa Brittan, McDermott, Will & Emery, Chicago, IL, for Amicus Curiae.

Before BAUER, WOOD, JR., and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Karl and Hope Wudtke believe that the defendants, numerous officials of the State of Wisconsin, various governmental entities, a bank, and a private attorney, have engaged in a massive conspiracy to deprive them of both business and personal rights. Buried in their voluminous allegations is one claim that one state defendant, Frederick Davel, the superintendent of the Shawano–Gresham School District (the "District"), violated Hope's civil rights by sexually assaulting and harassing her while she was employed by the District. After a lengthy period of discovery, the district court either dismissed or granted summary judgment to the defendants on all of the Wudtkes' claims. We agree with this disposition with respect to everything except Hope's sexual assault and harassment claim, which we remand for further proceedings.

**I**

We relate the background facts in the light most favorable to the Wudtkes, since this is an appeal from dismissals under Rules 12(b)(6) and 56. (It will be plain that some or all of the defendants vigorously contest many of these allegations, but we do not separately note that fact each time.) From 1984 to 1988 Hope Wudtke was employed by the District as a teacher of emotionally distressed students. Her husband Karl, who had worked as a teacher elsewhere, unsuccessfully applied for a teaching position in the District in 1987. His principal work, however, was with the couple's beekeeping business and related agricultural research. It is this business and the Wudtkes' perception that it was valuable enough to spawn an elaborate conspiracy by jealous outsiders that lie at the heart of this case.

The alleged plot began in 1986, when Hope's superiors began to increase Hope's workload sharply while unfairly criticizing the quality of her written reports for the first time (similar reports had been found acceptable in the past). Hope claims that beginning in March 1987 Superintendent Davel embarked on an increasingly offensive course of sexual harassment, beginning with unwanted touching of her hands and leg. On June 5, as Hope tells the story, Davel proposed a physical relationship with her and forcibly touched her breasts. The next day, he kissed her. On June 16 he compelled her to perform fellatio, which caused her to vomit. On July 6 and July 21 he again coerced her to engage in oral sex. Davel used his official position to compel her to cooperate. He threatened that he would not assign her a classroom aide to alleviate her workload, that he would prevent the District from hiring Karl, and that he would refuse to approve the renewal of her provisional special education license (without which she would lose her job) if she did not engage in sexual acts with him. Because of this harassment, Hope began to suffer severe emotional and physical problems. A psychiatrist diagnosed her as having "moderate problems, requiring medication." In 1988 she resigned from her teaching position.

In late 1987 the Wudtkes complained about Hope's workload and Davel's behavior to defendant John Syndergaard, who was a member of the District's board of trustees and an officer of the Valley Bank of Shawano (the "Bank"). In April 1988 they followed up with a letter to defendant Kathryn Cantwell, the president of the board. Hope alleges that the District finally investigated her complaint, but without consulting her or showing her its findings. Unsatisfied, the Wudtkes next filed complaints with·the EEOC and the Wisconsin Department of Justice, to no avail. At last, they turned· to the courts, filing the present suit on December 28, 1989. Disheartened by their lack of success, the Wudtkes came to suspect that a large and growing number of their adversaries were

collaborating in a shadowy conspiracy against them. A principal motive behind this conspiracy was the defendants' desire to drive the Wudtkes out of their agribusiness efforts and to acquire information about their beekeeping research and methods. This was why, as the Wudtkes saw things, Syndergaard threatened to foreclose the Bank's mortgage on their home when they fell behind in their payments, and why other defendants took steps to drive them into financial ruin.

## II

[1] In their federal court complaint, the Wudtkes sued Davel, the District, Cantwell, Michael Robbins (Director of Special Services for the District), William Matthias (Assistant Administrator for the District), Syndergaard, Thomas Bartel (a private attorney), the Bank, unknown corporations 1–100, unknown United States governmental or subordinate entities 1–100, unknown State of Wisconsin governmental or subordinate entities 1–100, and unknown individuals John and Jane Does 1–100. (We note in passing that it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed.R.Civ.P. 15, see *Delgado–Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir.1996), citing *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir.1978), nor can it otherwise help the plaintiff.) They asserted a myriad of claims against these defendants, which were detailed by Magistrate Judge Robert L. Bittner in a May 1991 recommendation to District Judge J.P. Stadtmueller. The claims included assertions of direct violations of the U.S. Constitution, RICO claims, Hobbs Act violations, violations of all of the major civil rights statutes (42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986), and a wide variety of supplemental claims under Wisconsin law. From the 27-page complaint, which the magistrate judge described as "rambling, indefinite, and inartfully stated," he distilled allegations of the following four conspiracies:

(1) Conspiracy by Davel, the District, Cantwell, Robbins, Matthias, Syndergaard, and Bartel to deprive Hope of her employment in the District, implemented by means of excessive workload and sexual harassment;

(2) Conspiracy by Davel, the District, Robbins, and Matthias to deprive Karl of potential employment with the District, in retaliation for Hope's refusals of the sexual advances or for her reporting this misconduct;

(3) Conspiracy by all defendants to deprive the Wudtkes of their home and property by raising their mortgage payments and foreclosing on their house; and

(4) Conspiracy by all defendants to commit RICO violations to deprive the Wudtkes of potential business interests in a honeybee/alfalfa seed/hay operation.

The Wudtkes sought compensatory damages on the conspiracy claims of $1,696,000, punitive damages of nearly $17 million, and treble damages under RICO of more than $10 million. In addition to the conspiracy claims, the Wudtkes alleged various state law torts and Hope raised an individual § 1983 claim arising out of Davel's sexual assaults and harassment prior to the end of August 1987.

The district court, after receiving the magistrate judge's recommendation, issued an order on July 9, 1991, granting summary judgment to all defendants except Davel, for whom it granted partial summary judgment, and denying the Wudtkes' countermotion for summary judgment. In an order of November 27, 1992, Judge Stadtmueller addressed both Hope's and Karl's supplemental claims. He concluded that none of Karl's could be brought for various technical reasons, but that Hope would be permitted to pursue her claims for common law assault and battery, intentional infliction of emotional distress, and invasion of privacy, because those claims all arose out of the same transactions and events that gave rise to her § 1983 claim against Davel. Hope's success, limited as it was, was not to last. On June 29, 1994, District Judge Rudolph Randa (to whom the case had been reassigned) concluded that none of Hope's federal claims against Davel stated a claim upon which relief could be granted, and that the supplemental state claims were time-barred. He dismissed the

last vestiges of the suit, and the Wudtkes brought their appeal *pro se* to this court. This court enlisted the services of an *amicus curiae* on the Wudtkes' behalf so that it could obtain a full presentation of the issues. We are grateful for the help *amicus* has furnished in response to our request.

## III

Initially, it is clear that the district court correctly perceived that the only possible claims in this lawsuit with any legal merit were those of Hope Wudtke against Davel for sexual assault and sexual harassment. The Wudtkes completely failed to substantiate their accusation of a broad and ever-expanding conspiracy. The mere fact that they repeated their speculations under oath is not enough to convert their suppositions into competent evidence. Moreover, these claims are riddled with evidentiary gaps: the Wudtkes ignore the fact that they have not shown that many of the defendants ever even met, let alone conspired. Likewise their purported evidence against the defendants other than Davel takes the form of unreasonable inferences from conclusory allegations in their pleadings, affidavits, and depositions. We agree with Magistrate Judge Bittner and Judge Stadtmueller that these claims are all entirely without merit, and we affirm those rulings.

Hope's § 1983 claim and the related state law claims stood on a different footing until Judge Randa decided that they failed the test of Rule 12(b)(6). At the final pretrial conference in the case, he announced that the defendants had raised defenses in their trial brief that would, if valid, eliminate the need for trial. After giving the Wudtkes extra time to respond, the court issued its opinion dismissing Hope's remaining claims. Relying on the Ninth Circuit's decision in *United States v. Attson*, 900 F.2d 1427 (9th Cir. 1990), it found that her allegations that Davel had inflicted unwanted sexual touches and bodily intrusions upon her did not state a claim under the Fourth Amendment, because even as described there was no investigatory or administrative benefit to the government in his course of conduct. Instead, he was acting for a reason that was independent of that kind of governmental purpose, which was not enough to trigger Fourth Amendment protections. With respect to her Fourteenth Amendment due process claims, the court acknowledged that Hope had alleged the violation of both a liberty interest and a property interest, but concluded that "even if Wudtke was deprived of her liberty and property in this regard, there is no constitutional violation if she received due process of law." It then observed that she had received an adequate postdeprivation remedy within the meaning of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and dismissed the Fourteenth Amendment claims. Last, choosing to retain jurisdiction of the supplemental state claims, the court found that the Wisconsin two-year statute of limitations governing intentional torts operated as a bar to suit, citing Wis. Stat. § 893.57. (The § 1983 claim itself was not time-barred because it was subject to the Wisconsin's six-year personal rights statute of limitations, Wis. Stat. § 893.53. See *Gray v. Lacke*, 885 F.2d 399, 407–09 (7th Cir.1989); *Doe v. Paukstat*, 863 F.Supp. 884, 889 (E.D.Wis.1994).)

## IV

For purposes of a motion under Rule 12(b)(6), the court's obligation is to decide whether the plaintiff can prove any set of facts consistent with the allegations that would give her a right to relief. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993); *Conley v. Gibson*, 355 U.S. 41, 45–47, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957). It is not necessary to specify particular legal theories in a complaint, so long as the facts alleged give adequate notice to the defendant of the basis of the suit. See, *e.g.*, *Sledd v. Linsday*, 102 F.3d 282, 288–89 (7th Cir.1996). In this case, undoubtedly distracted by the volume of other materials in the suit, the district

court took too narrow a view of Hope's Fourteenth Amendment claims when it characterized them as procedural due process complaints only.

■ In order to proceed on her § 1983 claim, Hope needed to show that Davel acted under color of state law to deprive her of a constitutional right. *Parratt*, 451 U.S. at 535, 101 S.Ct. at 1912–13; *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir.1994). The constitutional right on which she relies is the substantive due process component of the Fourteenth Amendment, which "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665; *Rowe v. DeBruyn*, 17 F.3d 1047, 1050 (7th Cir.1994). See also *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 1446–47, 123 L.Ed.2d 1 (1993). These definitions may not always clearly delineate what is prohibited, *cf. United States v. Lanier*, —— U.S. ——, ——, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997), and so "the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992), citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–26, 106 S.Ct. 507, 513–14, 88 L.Ed.2d 523 (1985).

Under this court's decisions, Hope's substantive due process claim for her alleged deprivations of property was correctly dismissed. Even assuming that she possessed a property interest in her employment and that Davel wrongly deprived her of it, we have held that "in cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." *Kauth v. Hartford Ins. Co.*, 852 F.2d 951, 958 (7th Cir.1988) (citations omitted); see also *Doherty v. City of Chicago*, 75 F.3d 318, 325–26 (7th Cir.1996).

■ Her liberty claim of a right to bodily integrity is, on the other hand, the type of claim that has often been recognized as within substantive due process, particularly in the line of cases dealing with privacy rights. See, *e.g.*, *Albright v. Oliver*, 510 U.S. 266, 271–72, 114 S.Ct. 807, 811–12, 127 L.Ed.2d 114 (1994) (plurality); *Planned Parenthood v. Casey*, 505 U.S. 833, 849, 112 S.Ct. 2791, 2805–06, 120 L.Ed.2d 674 (1992); *Bowers v. Hardwick*, 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986); *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir.1994). Contrary to the defendants' arguments, recourse to postdeprivation state tort remedies is not a plaintiff's only remedy for these kinds of claims. As the Supreme Court held in *Zinermon*, with regard to the incorporated provisions of the Bill of Rights and the substantive guarantees of the due process clause, "[a] plaintiff, under *Monroe v. Pape*, may invoke § 1983 regardless of any state tort remedy that might be available to compensate him for the deprivation of these rights." 494 U.S. at 125, 110 S.Ct. at 983, citing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); see also *Pena v. Mattox*, 84 F.3d 894, 897 (7th Cir.1996). This does not mean, of course, that all state torts can be transformed into § 1983 claims; the Supreme Court has repeatedly held that the opposite is true. E.g., *Collins*, 503 U.S. at 128, 112 S.Ct. at 1070; *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979); *Monroe*, 365 U.S. at 196, 81 S.Ct. at 488 (Harlan, J., concurring) ("[A] deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right."). On the other hand, once a wrong has properly been characterized as a constitutional tort, the fact that it may also be redressable under state law does not bar the victim from bringing an action under § 1983. *Zinermon*, 494 U.S. at 125, 110 S.Ct. at 983.

■ While it can be difficult at times to distinguish a procedural due process claim from one that is substantive, this is not such a case. No amount of predeprivation process would have made Davel's alleged behavior toward Hope palatable. Postdeprivation

remedies are a constitutionally acceptable substitute for predeprivation remedies in many procedural due process cases, but they cannot substitute for something that was itself a substantive constitutional tort. The only conceivable theories under which Hope could be required to use the state "postdeprivation" remedies for her substantive liberty claim would be (a) nonexhaustion of state procedures or (b) failure to state a constitutional claim. But there is no general exhaustion requirement for § 1983 plaintiffs, *Patsy v. Board of Regents*, 457 U.S. 496, 501, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982), and the exceptions for certain prisoner claims are not implicated here, see *Wright v. Morris*, 111 F.3d 414, 417 (6th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 263, — L.Ed.2d — (1997); *Pratt v. Hurley*, 79 F.3d 601, 602 (7th Cir.1996). Nor can we find on the basis of the pleadings alone that Hope has failed to state a substantive due process claim. Her complaint perhaps could have characterized the alleged sexual assault and harassment as a form of sex discrimination, in which case her suit might have invoked either Title VII, see *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), or the equal protection clause, see *Volk v. Coler*, 845 F.2d 1422, 1430–31 (7th Cir.1988); *Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir.1986). Instead, she alleged an extreme and outrageous violation of her person committed by a state actor, who she asserts was acting under color of state law. In some circumstances, at least, such a claim may rise to the level of a constitutional violation, as the Supreme Court implicitly recognized in *Lanier*, — U.S. at —, 117 S.Ct. at 1226–28.

This court has never had the occasion to address the question whether sexual assault under color of law states a substantive due process claim, although we recently assumed for the sake of argument (reserving the question) that it does in *West v. Waymire*, 114 F.3d 646, 647 (7th Cir.1997). Other courts of appeals, however, have faced similar claims. The case most squarely on point is *Bennett v. Pippin*, 74 F.3d 578 (5th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996), in which the Fifth Circuit affirmed a § 1983 judgment against a sheriff who raped a murder suspect who was not in his custody. The judgment was based on a violation of the victim's substantive due process right to bodily integrity—the same right Hope Wudtke invokes here. Importantly, the *Bennett* court did not rely on any affirmative duty the sheriff might have had if the victim had been in his custody. The Supreme Court confirmed in *Lanier* that *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), does not hold that "there is no constitutional right to be free from assault committed by state officials themselves outside of a custodial setting." — U.S. at — n. 7, 117 S.Ct. at 1228 n. 7. Similarly, the Third Circuit held in *Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir.1989), that a teacher who had committed multiple sexual assaults on his students using "physical force, threats of reprisal, intimidation and coercion" was not entitled to qualified immunity. *Id.* at 722. In so finding, the court determined that in the 1980s "[r]easonable officials would have understood the 'contours' of a student's right to bodily integrity, under the Due Process Clause, to encompass a student's right to be free from sexual assaults by his or her teachers." *Id.* at 727. See also *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir.1994) (*en banc*).

In our view, when a complaint alleges the kind of serious physical assault presented in *Bennett, Stoneking*, and in Hope Wudtke's complaint, under circumstances where the assaulter is enabled to take his actions because of his governmental position, it states a claim for purposes of § 1983. First, she has alleged actions that would, if proven, rise to the level of a constitutional tort. We need not decide how much less than that would also be cognizable under § 1983, but in keeping with *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), we note that merely negligent action by the state official would not be enough for a substantive due process claim. On the other hand, it is well established that Title VII does not preempt § 1983 for public employers. E.g., *Annis v. County of Westchester*, 36 F.3d 251, 254–55

(2d· Cir.1994); *Keller v. Prince George's County*, 827 F.2d 952, 956–62 (4th Cir.1987); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 623–24 (7th Cir.1986); *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 302 (7th Cir.1985) ("[T]he Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free of employment discrimination. A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would ·suggest a violation of Title VII."). The physical assaults at the hands of the top official of the school district described in Hope's complaint, if proven, amount to far more than negligence or an ordinary state tort claim. .

Even if the conduct violated Hope's substantive due process rights, no claim under § 1983 exists unless Davel was also acting under color of state law at the critical times. *West v. Atkins*, 487 U.S. 42, 50, 108 S.Ct. 2250, 2255–56, 101 L.Ed.2d 40 (1988); *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir.1995). Taking her allegations to be true, she claimed that Davel abused his position as superintendent of the school district (and her ultimate employer) by explicit invocation of his state-granted powers. He threatened to take adverse employment actions against her, up to and including terminating her employment by refusing to approve the renewal of her provisional special education license. This is, if anything, an even more clear link to his role as a state actor than the Fifth Circuit faced in *Bennett*, where the Sheriff told his murder suspect victim "I can do what I want, I'm the Sheriff," as he raped her. 74 F.3d at 589; . *cf. Becerra v. Asher*, 105 F.3d 1042, 1047–48 (5th Cir.1997); *Almand v. DeKalb County*, 103 F.3d 1510, 1512–15 (11th Cir.1997).

In his order dismissing Hope's claims, Judge Randa commented that "[i]f those allegations are true, Wudtke is the victim of a most shocking and cruel course of sexual violence and harassment. ·.. If [Davel's] denials are true, Davel is the victim of a most humiliating and damaging slander." We agree that one side or the other in this unfortunate saga has suffered terribly. The district court's only error was in denying Hope her right to develop a record suitable for summary judgment consideration and possibly a trial. We accordingly REVERSE the dismissal of Hope Wudtke's claim against Davel for a deprivation of liberty in violation of her substantive due process rights and REMAND for further proceedings consistent with this opinion. In all other respects we AFFIRM the judgment of the district court. Each side is to bear its own costs on appeal.

HARLINGTON WOOD, JR., Circuit Judge, with whom BAUER, Circuit Judge, joins, concurring.

It is with some hesitation that I join the reversal of the district court's dismissal of plaintiff Hope Wudtke's due process claim against defendant Davel.

Buried in the twenty-seven pages of Wudtkes' pro se and broad ranging conspiracy allegations from RICO claims to Hobbs Act violations we have managed to find one possible viable claim. The rest of plaintiffs' charges described by the Magistrate as "rambling," and "difficult to comprehend" include various allegations from sexual advances to mortgage foreclosures and clearly deserve· to be dismissed. Involved, among others, are the Republican Party, the United States Postal Service, the Wisconsin State Patrol, the Central Intelligence Agency, or National Security Council, courts, and various Canadian government agencies. Based on their imaginative allegations the Wudtkes sought compensatory damages of something in excess of $28 million dollars.

Apart from deciphering the allegations the legal problem is in determining whether Davel was acting under color of state. law in his alleged sexual assaults. In holding that there is that possibility so as to constitute a substantive due process constitutional claim we are doing some exploring, at least in this circuit. I would ordinarily have preferred that this holding be based on more reliable pleadings without the risk of additional and possibly undeserved difficulties for Davel. All sexual assaults in the schoolhouse need not be made constitutional issues for a federal tribunal. It is conceded that plaintiff has

a state postdeprivation remedy. Davel's alleged sexual activities could not have been anticipated by the State. It is easy, therefore, for me to understand the district court's view of this situation.

Because of the particular sexual allegations, however, in which Davel, the school superintendent and plaintiff's superior, allegedly threatened Wudtke's teacher's license and her job the constitutional claim may merit further consideration. On remand the district court may be able to better ascertain the facts and circumstances, and then determine whether there is any basis to support Wudtke's federal constitutional claim.

Having expressed these reservations I join the opinion.