In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3124

NATHAN D. ALEXANDER, II, and AMY GEPFERT,

*Plaintiffs-Appellants.*

v.

JOSEPH DEANGELO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:01-CV-137—**William C. Lee**, *Judge.*

ARGUED JANUARY 13, 2003—DECIDED MAY 22, 2003

Before POSNER, KANNE, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiffs appeal from the grant of summary judgment to the defendants in a damages suit against two Fort Wayne police officers, Joseph DeAngelo and Dan Hannaford, and the City itself. The plaintiffs have not appealed from the dismissal of their claim against the City, however; nor, it appears, are they pursuing their claim against Hannaford, whom the briefs ignore completely.

The suit was brought under 42 U.S.C. § 1983 in an Indiana state court, charging violations of the plaintiffs' federal civil

rights, and surprisingly was removed by the defendants to federal district court. The surprise lies in the belief by many civil rights lawyers that state courts favor the state's public officers. But at argument the defendants' lawyer explained that summary judgment is easier for a defendant to obtain in a federal court than in an Indiana state court; and the plaintiffs, having filed the case originally in the state court, doubtless anticipated a benefit from doing so.

The plaintiffs are a former Fort Wayne police officer, Nathan Alexander, and a woman, Amy Gepfert, whom DeAngelo and several fellow officers enlisted in a sting against Alexander. We construe the facts as favorably to the plaintiffs as the record permits, because of its procedural posture. Alexander was suspected of a variety of frauds. Gepfert was under investigation for participation in a cocaine offense. The officers asked Gepfert whether she knew Alexander. She did; in fact, she had had a sexual relationship with him, though it had ended a month previously. They told her she was facing 40 years in prison on the cocaine charge unless she agreed to help them nail him. She asked to consult a lawyer, and although they did not forbid her to do so they discouraged her, telling her that *they* were "the attorneys." In a second meeting with her, three days later, they asked her whether she had ever received money from Alexander after having sex with him, and she said she had, once, to get her nails done. They asked her whether she'd be willing to have oral sex with him for money, so that they could charge him with soliciting a prostitute. She agreed. They wired her for the encounter and also gave her a napkin and instructed her to spit Alexander's semen into it to provide physical evidence of the sex act. She duly performed oral sex on him in his patrol car and asked for and received $17 to do her nails, and she preserved the semen in the napkin and gave it to the

officers. Alexander was arrested and charged with various offenses, including soliciting a prostitute, but the charges were dropped, apparently because the state's witnesses, including Gepfert, refused to cooperate further. Alexander claims that the charges were baseless, but this is very doubtful in view of the evidence. After a hearing that provided him with due process, the police department fired him for his various offenses. Gepfert, who had no criminal record, was not charged with any offense, either prostitution or sale of cocaine. DeAngelo was not disciplined for his unusual investigative tactics.

We can deal quickly with Alexander's appeal. Stings are not illegal or even disreputable, see *United States v. Murphy*, 768 F.2d 1518, 1528-29 (7th Cir. 1985); there was reason to believe that Alexander had paid Gepfert for sex in the past; and there was probable cause to arrest him on the basis of the recording of his encounter with her in the patrol car, the semen in the napkin being a gratuitous addition to the evidence. The fact that Gepfert asked him for money for her nails is irrelevant. Prostitutes, like other people, seek income in order to purchase goods and services. It is not a defense to prostitution for the prostitute to say, "My fee is $100 and I plan to use it to buy milk for my children." Although there is some evidence of hostility to Alexander on the part of other Fort Wayne police officers because he is black but has had white girlfriends, the evidence is clear that the reason the department was out to get him was a well-founded suspicion that he had engaged in a variety of illegal acts, most of them more serious than paying for oral sex. He would not have had sex with Gepfert had he known she was trying to set him up for an arrest, but the fact that he was tricked into having sex is not a defense. *United States v. Simpson*, 813 F.2d 1462, 1466-68 and n. 4 (9th Cir. 1987). Nothing is more common in the investigation of victimless crimes

such as prostitution than to pose a police officer (or, as here, a cooperating witness) as a prostitute. Such trickery does not violate any constitutional right of criminals. *State v. Tookes*, 699 P.2d 983, 985-86 (Haw. 1985); *State v. Putnam*, 639 P.2d 858, 860, 862 (Wash. App. 1982).

Coercing Gepfert to have sex with Alexander, if that is the proper characterization of what happened here, is a more serious matter. But even if that violated *her* rights, it would not help him; he cannot complain about an infringement of the constitutional rights of another person. *United States v. Payner*, 447 U.S. 727, 737 n. 9 (1980); *United States v. Noriega*, 117 F.3d 1206, 1213-15 (11th Cir. 1997); *United States v. Santana*, 6 F.3d 1, 8-9 (1st Cir. 1993). Since, however, she is also a plaintiff, we must consider whether her rights were violated.

There is much debate in the briefs over whether "outrageous" police conduct, as Gepfert characterizes her treatment by the police, can ever in and of itself, that is, by virtue of its sheer outrageousness, be deemed a violation of a person's rights under the due process clause of the Fifth or Fourteenth Amendments. The debate echoes cases in which outrageous police behavior is interposed as a defense to a criminal prosecution. Some circuits continue to recognize the existence of such a defense, at least as a theoretical possibility. *United States v. Nolan-Cooper*, 155 F.3d 221, 224, 230 (3d Cir. 1998); *United States v. Gaviria*, 116 F.3d 1498, 1533-34 (D.C. Cir. 1997) (per curiam); *United States v. Santana, supra*, 6 F.3d at 3-8. Yet as the last of these opinions points out, "the doctrine is moribund; in practice, courts have rejected its application with almost monotonous regularity." *Id.* at 4. We flatly rejected the doctrine in *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995); see also *United States v. Tucker*, 28 F.3d 1420, 1426-28 (6th Cir. 1994), because the concept of outrageous police conduct is hopelessly nebulous and subjective and because

the fact that the police misbehave is not a sensible ground for letting a guilty criminal walk.

Gepfert's claim, however, can be cut loose from the "outrageous" police conduct cases and reconceptualized as a charge of battery committed under color of state law and therefore actionable under the due process clause of the Fourteenth Amendment after all. The liberty protected by that clause includes bodily integrity, see *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278-79 (1990), and cases cited there; *United States v. Husband*, 226 F.3d 626, 632 (7th Cir. 2000), and is infringed by a serious, as distinct from a nominal or trivial, battery. *Wudtke v. Davel*, 128 F.3d 1057, 1062-63 (7th Cir. 1997); *Bennett v. Pippin*, 74 F.3d 578, 583-84, 589 (5th Cir. 1996); *Stoneking v. Bradford Area School District*, 882 F.2d 720, 722, 726 (3d Cir. 1989). The qualification is important. Because any offensive touching (unless consented to, which removes the offense) is a battery, *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.), most batteries are too trivial to amount to deprivations of liberty. *Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir. 1985); *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999); *Luciano v. Galindo*, 944 F.2d 261, 264 (5th Cir. 1991); *Committee of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 948-49 (D.C. Cir. 1988); *Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir. 1979); *Johnson v. Glick, supra*, 481 F.2d at 1033; cf. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998). Rape, however, is not only a battery, *Paul v. Montesino*, 535 So. 2d 6, 7 (La. App. 1988); *United National Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993), but a very serious battery, and a rape committed under color of state law is therefore actionable under 42 U.S.C. § 1983 as a deprivation of liberty without due process of law. *Wudtke v. Davel, supra*, 128 F.3d at 1063; *Jones v. Wellham*, 104 F.3d 620, 622, 628 (4th Cir. 1997); *Rogers v. City of Little Rock*, 152 F.3d 790, 793-96, 798 (8th Cir. 1998).

Sex procured by threats that the threatener has no legal right to make is a common form of rape, see, e.g., *People v. Thompson*, 530 N.E.2d 839, 840-42 (N.Y. 1988); *People v. Minsky*, 129 Cal. Rptr. 2d 583, 584-87 (App. 2003), review granted, 2003 WL 21005629 (Cal. Apr. 16, 2003); *Gibbs v. State*, 623 So. 2d 551, 552-54 (Fla. App. 1993) (per curiam), and this is a permissible characterization of the facts of this case as they are disclosed by the record to date, though a trial might cast them in a different light. On Gepfert's construal of the facts, she was induced by DeAngelo and his fellow officers to perform oral sex on Alexander by their threat to put her away for 40 years if she refused to cooperate with them. Given that Gepfert had no criminal record and never was prosecuted for the cocaine offense even after she refused to play ball with the prosecution of Alexander, and given also the effort to discourage her from consulting a lawyer before she decided whether to participate in the sting against Alexander, the threat may have been fraudulent. The suggestion that she was facing a prison term of 40 years was extravagant. Because of the small quantity of cocaine that she was alleged to have sold, the absence of conspiracy or aggravating circumstances, and her lack of a criminal record, she would have been guilty only of a class B felony, see Ind. Code § 35-48-4-1(a), for which the sentence is 10 years with a possible reduction to 6 years if there are mitigating circumstances, *id.* § 35-50-2-5—as there were here.

It thus appears (always construing the facts as we must at this stage of the litigation as favorably to the plaintiff as the record will permit) that the police may have obtained Gepfert's consent to sex by fraud, and if so that was a battery. Granted, not all fraudulent solicitations of sex, even if successful in inducing sex, are actionable as battery or punishable as rape. For example, it is not a battery, or rape, to induce consent to sexual intercourse by a false promise of marriage, *Oberlin v. Upson*, 95 N.E.

511, 512 (Ohio 1911); *Freedman v. Superior Court*, 263 Cal.
Rptr. 1, 3 (App. 1989); see also *Restatement (Second) of
Torts* § 892B, comment g and illustration 9 (1979), though
in some states it is the tort of breach of promise. But a
false threat of lengthy imprisonment is a form of coercion
that can vitiate consent to sex and turn the sex into bat-
tery. Cal. Penal Code § 261(a)(6); *Doe v. South Carolina
State Budget & Control Board*, 494 S.E.2d 469, 471 (S.C. App.
1997), aff'd, 523 S.E.2d 457 (S.C. 1999); cf. *United States
v. Horton*, 601 F.2d 319, 322-23 (7th Cir. 1979); *Hart v.
Miller*, 609 N.W.2d 138, 141-46 (S.D. 2000). That DeAngelo
did not intend to have sex with Gepfert, cf. *State v. Carlson*,
48 P.3d 1180, 1190-91, 1193 (Ariz. 2002); *Greene v. State*, 572
S.E.2d 382, 384-85 (Ga. App. 2002), that she had a prior
sexual relationship with Alexander, that she may think oral
sex no big deal (some young people nowadays do not
consider it "real" sex at all), that she did not consult a
lawyer in order to obtain a realistic assessment of her
exposure to criminal punishment, and that she did not
express indignation (compare Isabella in *Measure for Mea-
sure*) at being asked to engage in sex for an ulterior purpose,
are circumstances that neither singly nor in combination
constitute a defense to battery, though they may be relevant
to damages—as may, on the other side, be the fact that
Gepfert's agreeing to act as a prostitute "got out" and
received media attention. While libel or, more nearly on
point, casting a person in a false light is not a constitu-
tional tort, if a constitutional tort is proved damages to
reputation are allowable along with the other consequential
damages traceable to the tort. *Dishnow v. School District of
Rib Lake*, 77 F.3d 194, 199 (7th Cir. 1996).

   We want to emphasize, however, a point that we made
earlier in discussing Alexander's claim—that the use
of trickery is an accepted tool of criminal law enforce-
ment and does not in itself give rise to liability under sec-

tion 1983. Trickery is the essence of the sting, and the sting is an indispensable method for detecting certain types of crime, such as public corruption. But there are limits to the principle that condones deceit in law enforcement just as there are limits to most other legal principles. For example, although "a law-enforcement agent may 'actively mislead' a defendant in order to obtain a confession, so long as a rational decision remains possible," *United States v. Ceballos*, 302 F.3d 679, 695 (7th Cir. 2002), quoting *United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990), the qualification "so long as a rational decision remains possible" is important and a confession induced by a false promise of leniency—or of punishment—may be deemed coerced and therefore inadmissible in a criminal prosecution. *Johnson v. Trigg*, 28 F.3d 639, 641-42 (7th Cir. 1994); *United States v. Rutledge, supra*, 900 F.2d at 1130. And for an injury inflicted in the course of coercing a suspect to confess, damages can be sought in a suit under section 1983. E.g., *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993). So fraud can, depending on its consequences, give rise to a section 1983 claim. If Gepfert's evidence is believed (an essential qualification, given the procedural posture of the case), the elements of a serious battery committed by means of a fraud are present, and this distinguishes the present case from one of permissible police trickery.

We also emphasize, as further marking the limits of this opinion, that inducing a confidential informant to engage in sex as part of a sting operation does not always give rise to a claim under section 1983. This is so even though it differs from the usual situation in which a confidential informant or government undercover agent commits a crime, such as buying or selling illegal drugs, as part of a sting; for in such a case the crime is nominal; the stinger is neither benefited nor harmed by his participation in it. Gepfert engaged in a sexual act, and not for pleasure. But confidential informants often agree to

engage in risky undercover work in exchange for leniency, and we cannot think of any reason, especially any reason rooted in constitutional text or doctrine, for creating a categorical prohibition against the informant's incurring a cost that takes a different form from the usual risk of being beaten up or for that matter bumped off by a drug dealer with whom one is negotiating a purchase or sale of drugs in the hope of obtaining lenient treatment from the government. The rub here is that Gepfert (always assuming that she can sustain her case in a trial) was intentionally and indeed grossly deceived about the benefits and costs of the distasteful act in which she was asked to engage.

The qualification in "intentionally and indeed grossly deceived" deserves emphasis, however: we do not expect law enforcement personnel to be experts in the intricacies of the nearly unfathomable federal sentencing guidelines or comparable intricacies in state sentencing regimes; nor do we expect that misstatements about a specific sentence that an accused potentially faces will routinely rise to the level of an actionable fraud.

But we have yet to consider the defense of qualified immunity. Although the principle that battery under color of law is actionable under section 1983 is well established, *Rogers v. City of Little Rock, supra*, 152 F.3d at 798; *Jones v. Wellham, supra*, 104 F.3d at 628, a plaintiff does not defeat the immunity defense "simply by alleging violation of extremely abstract rights. . . . The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). The police did not rape Gepfert in the ordinary sense of the term "rape," or for that matter cause Alexander to rape her in the ordinary sense in which one would speak of *A* having

caused *B* to rape *C*—nor have we found any "third party" rape cases. Characterization of DeAngelo's action as rape and hence battery required us to engage in a close and perhaps not entirely intuitive analysis leading to a conclusion likely to startle many police officers. Indeed, the plaintiff's lawyer himself barely hinted at the theory that we have adopted.

Granted, the absence of a previous decision establishing liability on the same facts is not critical; "the easiest cases [for liability] don't even arise." *United States v. Lanier*, 520 U.S. 259, 271 (1997); *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990). We said in *McDonald by McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992), that "it should have been obvious to Haskins that his threat of deadly force—holding a gun to the head of a 9-year-old and threatening to pull the trigger—was objectively unreasonable given the alleged absence of any danger to Haskins or other officers at the scene and the fact that the victim, a child, was neither a suspect nor attempting to evade the officers or posing any other threat." This case is just over the line from that one; for we cannot say that it would have been obvious to the average officer that the deceit employed in this case rose to the level of a constitutional violation. Hence DeAngelo (and Hannaford, if as we doubt he is still in the case) is protected from liability.

AFFIRMED.

A true Copy:

     Teste:

                                   ————————————————

                                   *Clerk of the United States Court of Appeals for the Seventh Circuit*