In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-1550

ZAILEY HESS,

*Plaintiff-Appellant,*

*v.*

JAMIE GARCIA, Officer, and
JOHN DOUGHTY, Chief,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:21-cv-00101-JD-MGG — **Jon E. DeGuilio**, *Chief Judge.*

ARGUED FEBRUARY 9, 2023 — DECIDED JULY 5, 2023

Before EASTERBROOK, HAMILTON, and LEE, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This suit arises from a seventeen-year-old student's class assignment to go on a "ride along" with law enforcement. According to the complaint, this ride along quickly strayed from its educational purpose as the officer repeatedly sexually assaulted and harassed the student. She has sued both the officer and the local police chief under 42 U.S.C. § 1983 for violating her constitutional rights.

The district court granted both defendants' motions to dismiss with prejudice for failure to state a claim. We affirm dismissal of the claim against the chief of police. Plaintiff did not plead facts suggesting the chief had a requisite level of involvement in the alleged violations for personal liability under 42 U.S.C. § 1983.

We reverse dismissal of the claim against the officer. It is well established that sexual assault by a government official acting under color of law violates the Constitution. Cases from different circuits have relied on different constitutional provisions, but they have agreed on that bottom line, holding that sexual assault can violate the Fourteenth Amendment Equal Protection Clause as sex discrimination, the Fourth Amendment right "of the people to be secure in their persons," and the right to bodily integrity protected by the Fourteenth Amendment Due Process Clause. We reject the defense argument that the alleged conduct was simply "boorish" and not serious enough to implicate the Constitution. We decline the invitation to draw lines between constitutional and unconstitutional sexual assaults by government officials acting under color of law. Sexual assault is an intentional act that never serves a legitimate governmental purpose.

Because we are considering this case on the pleadings, we do not decide which of the three constitutional theories provides the best path for litigation. The complaint should have survived the motion to dismiss under each theory. If it becomes necessary later to focus on doctrinal differences among these theories, jury instructions applying them to actual evidence may provide the best opportunity to do so.

I. *Factual and Procedural Background*

We accept the factual allegations in the complaint as true and draw reasonable inferences in plaintiff's favor because we are reviewing de novo a dismissal on the pleadings for failure to state a claim. E.g., *Word v. City of Chicago*, 946 F.3d 391, 393 (7th Cir. 2020).

A. *The Ride Along*

When plaintiff Zailey Hess was a seventeen-year-old student, one of her classes required her to participate in a ride along with a police officer. On February 15, 2019, Hess went on a ride along with defendant Jamie Garcia of the Hammond, Indiana, police. Officer Garcia picked Hess up in his private vehicle and drove her to the police station before his shift began. Garcia introduced Hess to other officers around the station before leading her to the parking lot. Hess got into the patrol vehicle and put on her seatbelt.

The complaint describes a day-long sequence of inappropriate comments and questions punctuated by unwelcome physical sexual contacts. When Hess got into the patrol car, Officer Garcia immediately began touching her, reaching over and rubbing his arm against her breast while adjusting the seatbelt she had already secured. Throughout the ride along, Officer Garcia repeatedly reached across the center console to place his hand on Hess's thigh. Even outside the vehicle, Garcia's sexual groping continued. Garcia drove Hess to a gas station in what Hess described as a bad area of town where the cashier worked behind bulletproof glass. Hess and Garcia went inside the store. Hess got in line behind Garcia, who told her to move to stand in front of him. When Hess did so, Officer Garcia placed his hand on her buttocks.

Throughout the ride along, Garcia also asked Hess about her dating and sex life. While on patrol, Garcia told Hess he was going to find a prostitute for her. Garcia stopped a woman he assumed was a prostitute, introduced Hess, and told the woman that Hess wanted to become a prostitute herself.

Late in the evening, Garcia and other officers made an arrest. After leaving the scene, Garcia drove Hess to a secluded area where they met another Hammond police officer. In this secluded area, Garcia spoke to the other officer through open car windows and repeatedly asked the other officer if he wanted to have sex with Hess, who stayed in the car, terrified.

After Hess's ride along, another female classmate participated in the course-required ride, also with Officer Garcia. When the classmate told Hess that Garcia had acted inappropriately with her, the two students reported their experiences to a teacher. Defendant John Doughty was the Hammond police chief at the time.

B.  *This Lawsuit*

Hess sued Garcia and Chief Doughty in their individual capacities under 42 U.S.C. § 1983. Although a complaint need not plead legal theories, e.g., *Koger v. Dart*, 950 F.3d 971, 974–75 (7th Cir. 2020), the complaint made clear that Hess was invoking the Equal Protection Clause of the Fourteenth Amendment, the Fourth Amendment, and the Due Process Clause of the Fourteenth Amendment. Defendants Doughty and Garcia filed separate motions to dismiss. The district court granted both motions and dismissed all claims with prejudice. *Z.H. v.*

*Garcia*, No. 3:21-CV-101 JD, 2022 WL 857035, at \*6 (N.D. Ind. Mar. 21, 2022). This appeal followed.[1]

II. *Analysis*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when … [it] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A. *Common Ground Across the Circuits*

In similar cases, different circuits have taken several doctrinal paths to a common ground: sexual assault by an official acting under color of law violates the constitutional rights of the victim. E.g., *United States v. Giordano*, 442 F.3d 30, 47 (2d Cir. 2006) ("victims [have] a right under the Fourteenth Amendment to be free from sexual abuse by a state actor"); *United States v. Shaw*, 891 F.3d 441, 444–45, 450 (3d Cir. 2018) (affirming conviction of correctional officer who raped pretrial detainee for violating constitutional right to bodily integrity); *United States v. Sepulveda*, 64 F.4th 700, 703–04 (5th Cir. 2023) (same for police officer who committed sexual assault); *Sexton v. Cernuto*, 18 F.4th 177, 184, 192–93 (6th Cir. 2021) (rejecting qualified immunity for official who facilitated sexual

---

[1] Based on Hess's youth and the nature of the allegations, the district court allowed Hess to sue without making her name public. At oral argument on appeal, we questioned the need and justification for continuing the secrecy since Hess was by then an adult. Hess agreed to use her real name in the caption and other documents.

assault, violating victim's right to bodily integrity); *Johnson v. Phillips*, 664 F.3d 232, 239 (8th Cir. 2011) (law was "clearly established in this circuit that the commission of a sexual assault by a government official acting under color of law constitutes a violation of due process that shocks the conscience"); *United States v. Gonzalez*, 533 F.3d 1057, 1064 (9th Cir. 2008) ("Included in the liberty protected by the Fourteenth Amendment is the concept of personal bodily integrity and specifically 'the right to be free from certain sexually motivated physical assaults….'"), quoting *United States v. Lanier*, 520 U.S. 259, 262 (1997).[2]

Seventh Circuit precedents involving sexual assault by an official acting under color of law approve of the Fourteenth Amendment Equal Protection and Due Process Clause theories of liability. E.g., *Doe v. Smith*, 470 F.3d 331, 337–38 (7th Cir. 2006) (concluding that sexual abuse by school dean may violate Equal Protection or Due Process Clauses);[3] *Wudtke v. Davel*, 128 F.3d 1057, 1062–63 (7th Cir. 1997) (same for sexual assault by school superintendent). The parties have not cited

---

[2] See also, e.g., *United States v. Dillon*, 532 F.3d 379, 382–83 (5th Cir. 2008) (city attorney who raped misdemeanants violated constitutional right to bodily integrity); *Rogers v. City of Little Rock*, 152 F.3d 790, 794 (8th Cir. 1998) (acknowledging due process right to be free from sexual touching by officials); *Doe by Doe v. Hillsboro Independent School Dist.*, 81 F.3d 1395, 1406 (5th Cir. 1996) ("At least since 1987, the law has been clearly established that … physical sexual abuse by a school employee violates" due process right to bodily integrity; *Dang Vang v. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991) (noting "constitutional right to be free from sexual assault").

[3] A different, statutory holding in *Doe v. Smith* was abrogated by *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009).

and we have not found a factually analogous case from this circuit addressing a Fourth Amendment theory of liability.

Several other circuits say that sexual assault by an official violates the Equal Protection Clause. E.g., *Jennings v. Univ. of North Carolina*, 444 F.3d 255, 273–74, 279 (4th Cir. 2006) (sexual assault is "a 'severe' example of sexually harassing behavior" that violates Constitution as sex discrimination); *Johnson v. Martin*, 195 F.3d 1208, 1211 (10th Cir. 1999) (clearly established that official sexually harassing private citizen violates clause).

Some courts apply the Fourth Amendment to similar facts and reject Fourteenth Amendment theories. *Dickey v. United States*, 174 F. Supp. 3d 366, 370–71 (D.D.C. 2016) (analyzing officer fondling of genitalia during search under Fourth Amendment); *Jones v. District of Columbia*, No. 00-1773 (RJL), 2002 U.S. Dist. LEXIS 27746, at *10–12 (D.D.C. Sept. 28, 2002) (analyzing sexual misconduct during arrest under Fourth Amendment, rejecting due process theory); see also *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001) ("Sexual misconduct by a police officer … generally is analyzed under the Fourteenth Amendment; sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment.").[4]

Other circuits say that these claims are best analyzed not as Fourth Amendment violations but as violations of the right to bodily integrity protected by the Fourteenth Amendment Due Process Clause. *Tyson v. County of Sabine*, 42 F.4th 508,

---

[4] See also *Smith v. Ray*, 409 F. App'x 641, 649 (4th Cir. 2011) (non-precedential) ("sexual assault by a police officer clearly violates the security interests protected by the Fourth Amendment").

514–20 (5th Cir. 2022) (favoring Fourteenth Amendment the-ory over Fourth Amendment where officer went to woman's home for welfare check and sexually abused her); *Martinez v. Hongyi Cui*, 608 F.3d 54, 56, 58 (1st Cir. 2010) (same for rape by physician); *Poe v. Leonard*, 282 F.3d 123, 125, 136–37 (2d Cir. 2002) (same for officer recording woman undressing); *Rogers*, 152 F.3d at 796 (same for rape by officer, noting the "violation here is different in nature from one that can be analyzed un-der the fourth amendment reasonableness standard," as "[n]o degree of sexual assault by a police officer acting under color of law could ever be proper"); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (same for rape by officer after traffic stop); *Haberthur v. City of Raymore*, 119 F.3d 720, 724 (8th Cir. 1997) (favorably citing *Wellham* for point that sexual assault outside an arrest can violate bodily integrity).

Some cases rejecting the Fourth Amendment for the Four-teenth say that the Fourth Amendment applies only when the challenged conduct occurred in the context of a criminal in-vestigation. E.g., *Poe*, 282 F.3d at 136 ("The Fourth Amend-ment is not the proper source of Poe's constitutional right be-cause Pearl's objectionable conduct occurred outside of a criminal investigation…."); *Jones*, 104 F.3d at 628 (rejecting Fourth Amendment theory because "the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct").

With respect, that narrow view of the Fourth Amendment seems to be contrary to Supreme Court precedent. For exam-ple, in *City of Ontario v. Quon*, 560 U.S. 746 (2010), the Court expressly rejected the argument that the Fourth Amendment did not apply to searches of pagers and text messages because their owners were not under criminal investigation. The

Court wrote: "It is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations. 'The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government,' without regard to whether the government actor is investigating crime or performing another function." 560 U.S. at 755–56, quoting *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 613–14 (1989) (citation omitted).

As we explain next, Hess has plausibly alleged facts supporting liability under the theories of the Fourteenth Amendment Equal Protection Clause, the Fourth Amendment, and the Fourteenth Amendment Due Process Clause. At this early procedural stage, we leave all three of these doctrinal lanes open on remand, and we see no basis for requiring plaintiff to choose just one or two while federal courts are sorting out these theories. Alternative legal theories for relief for the same injury can present procedural challenges at trial but are certainly permissible.

B.  *Equal Protection*

The district court held that Hess failed to allege a violation of the Equal Protection Clause because her complaint did not identify a similarly situated individual whom Garcia treated more favorably. *Z.H.*, 2022 WL 857035, at *5. We reverse dismissal on this theory for two reasons. First, identifying a similarly situated individual is not necessary at the pleading stage so long as the complaint plausibly alleges differential treatment motivated by plaintiff's membership in a group that is distinct for equal protection purposes. Second, in equal protection cases plausibly alleging sexual assault or sexual

harassment, the identification of a similarly situated individual is not necessary at any procedural stage.[5]

First, we repeat that even in cases where identification of a similarly situated individual may be necessary at trial, such identification is not required in the pleadings. *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 590 (7th Cir. 2021) ("we have consistently held a plaintiff need not identify a similarly situated entity in its complaint"); *Capra v. Cook County Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013) (reversing dismissal based on failure to name similarly situated comparator in complaint); *Geinosky v. City of Chicago*, 675 F.3d 743, 748 n.3 (7th Cir. 2012) (reversing dismissal: "Even the more demanding pleading requirements under *Iqbal* and *Twombly* do not require a plaintiff to identify specific comparators in a complaint."); see generally *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002) (reversing dismissal because plaintiff alleging employment discrimination need not plead elements of *McDonnell Douglas* method of proof, including comparator: "Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.").

---

[5] Garcia argues that Hess waived her equal protection theory. We disagree. The district court addressed equal protection on the merits, and Hess's brief before this court engaged with that ruling. We also disagree with the district court's suggestion that the theory was "as good as" waived before that court. *Z.H.*, 2022 WL 857035, at *5. Hess's response brief in the district court set forth the proper standard of review and said clearly why the complaint adequately alleged a violation: It is plausible that Garcia subjected Hess to groping and sexual harassment because Hess is female. Further development of the obvious connection between sexual misconduct and sex discrimination is not necessary to state a claim under an equal protection theory.

Second, naming a similarly situated person who was not subjected to sexual misconduct by a public official is unnecessary even at later stages of litigation. As a matter of evidence in equal protection or discrimination cases, comparators may help a plaintiff undermine a defendant's offered justification for his treatment of the plaintiff. But we recognize that requiring a comparator "would elevate form over substance" where the facts alleged "clearly suggest harassment by public officials that has no conceivable legitimate purpose." *Geinosky*, 675 F.3d at 748. "The nature of the harm is such that there is virtually no scenario imaginable where sexual harassment … is substantially related to important governmental objectives." *Bohen v. East Chicago*, 799 F.2d 1180, 1187 (7th Cir. 1986). Accordingly, no comparator is necessary in cases of sexual assault or sexual harassment by government officials because there is no legitimate governmental purpose for such actions.[6]

Counsel for Garcia made the surprising assertion in briefing and at oral argument that there *could* be a governmental interest served by the conduct alleged here. Counsel suggested that Garcia "was making for an exciting ride along" with his "frankly innocuous" yet "perhaps boorish conduct." Garcia's briefing repeats the characterization of his behavior as nothing more than "boorish flirtation," "arguably presented in a joking fashion intended to make the ride-along more sensational but not dangerous." Perhaps the defense

---

[6] Other circuits agree. E.g., *Fontana*, 262 F.3d at 880 (repeating "there can be no 'countervailing governmental interest' to justify sexual misconduct"); *Doe v. Taylor Independent School Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) ("Obviously, there is never any justification for sexually molesting a schoolchild, and thus, no state interest [served.]").

might try to persuade a jury with that theory—a matter we leave to the district court in the first instance—but we continue to reject the idea that a police officer's sexual assault or sexual harassment serves any legitimate governmental interest.

To state a claim under the Equal Protection Clause, Hess had to allege plausibly that Garcia "discriminated against [her] based on [her] membership in a definable class." *Word*, 946 F.3d at 396, quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). The complaint describes Garcia's abuse of his position of authority by groping Hess, telling another male officer he should have sex with Hess in a remote location, asking Hess about her sexual experience, and seeking out a prostitute to ask for "tips" on behalf of Hess for her supposed future in the profession. All during a ride along meant to educate a student about law enforcement. There is no suggestion here that Garcia was an "equal opportunity harasser" who sexually assaulted men as well as women. Plaintiff's allegations easily support an inference that Garcia acted this way based on Hess's sex.

### C. *Fourth Amendment*

To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable. See, e.g., *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). Hess's complaint supports the theory that seizures occurred through sexual touching without consent, see *id.* at 620–21 (whether officer's touch constituted seizure was question for jury considering all circumstances, including consent and governmental purpose), and through being driven to a remote area where Garcia repeatedly asked another officer if he wanted to have sex with

Hess. See *Brendlin v. California*, 551 U.S. 249, 255 (2007) ("seizure occurs if 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave'"), quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (principal opinion). In addition to pleading these facts with obvious ties to the Fourth Amendment—and even though plaintiffs need not plead legal theories, e.g., *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014); *Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 479 (7th Cir. 2019)—the complaint explicitly alleges a Fourth Amendment violation.[7]

---

[7] The district court found that Hess withdrew the Fourth Amendment theory, *Z.H.*, 2022 WL 857035, at *1 n.1, and the issue was not raised before this court until oral argument. However, we disagree with the district court over withdrawal and exercise our discretion to review the Fourth Amendment theory. All parties understood that the complaint raised a Fourth Amendment theory. Each defendant's motion to dismiss addressed the Fourth Amendment, and Hess's briefs cited precedent for applying the Fourth Amendment. The district court seems to have relied on one sentence from plaintiff's briefing to find withdrawal: "Rather than beat a dead horse, Plaintiff ZH is comfortable with the Court ruling that only the 14th Amendment applies." That statement was conditional, premised on the district court *denying* the motion to dismiss on the Fourteenth Amendment theory. As plaintiff explained, such a denial would allow the lawsuit to proceed, and plaintiff could refine legal theories later. Nowhere did Hess indicate she did not want the district court to rule on the merits of the Fourth Amendment even if that court rejected her Fourteenth Amendment theories. In fact, plaintiff wrote that if the court dismissed the Fourth Amendment theory, "Plaintiff seeks leave to amend." Allowing Hess's Fourth Amendment theory to fall away would be unfair considering how clearly her complaint invoked the Fourth Amendment and how persistently she briefed the issue on the merits before the district court.

A Fourth Amendment seizure can occur regardless of
whether an officer is involved in a criminal investigation:

> In our view, the reason why an officer might en-
> ter a house or effectuate a seizure is wholly ir-
> relevant to the threshold question whether the
> Amendment applies. What matters is the intru-
> sion on the people's security from governmen-
> tal interference. Therefore, the right against un-
> reasonable seizures would be no less trans-
> gressed if the seizure … was undertaken to col-
> lect evidence … or on a whim, for no reason at

---

Garcia argues that Hess waived her right to the application of the
Fourth Amendment to her claims by not addressing the district court's
finding of "withdrawal" in her opening brief before this court. We disa-
gree. Hess put squarely before this court the merits of her claim that Gar-
cia's conduct violated her constitutional right to be free from sexual as-
sault by a government official. "When an issue or claim is properly before
the court, the court is not limited to the particular legal theories advanced
by the parties, but rather retains the independent power to identify and
apply the proper construction of governing law." *Kamen v. Kemper Finan-
cial Servs.*, 500 U.S. 90, 99 (1991); see also *Williams-Guice v. Board of Educ.*,
45 F.3d 161, 163 (7th Cir. 1995) ("litigants' failure to address the legal ques-
tion from the right perspective does not render us powerless to work the
problem out properly. A court of appeals may and often should do so un-
bidden rather than apply an incorrect rule of law to the parties' circum-
stances"). As explained above, different courts allow similar claims to pro-
ceed under several legal theories. The circuits' conflicting opinions about
the appropriate constitutional theories for officials' sexual assaults present
an unusual situation where there is value in considering which constitu-
tional path or paths best fit Hess's claim. By analyzing Hess's claim under
the Fourth Amendment, we are not identifying sua sponte a claim that the
plaintiff did not bring. Instead, we are properly addressing a legal theory
that fits the claim squarely before us. See *United States v. Robl*, 8 F.4th 515,
528 n.32 (7th Cir. 2021).

all. As we have observed on more than one occasion, it would be "anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior."

*Soldal v. Cook County*, 506 U.S. 56, 69 (1992), quoting *Camara v. Municipal Court*, 387 U.S. 523, 530 (1967). Hess does not receive less protection against unreasonable seizures under the Fourth Amendment because she encountered Officer Garcia in her role as a student learning about law enforcement rather than as a criminal suspect.

A seizure "can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021), quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry*, 392 U.S. at 16. Physically grabbing someone is likely to be a seizure because it is likely to restrict movement, at least briefly. "The fleeting nature of some seizures by force undoubtedly may inform what damages a civil plaintiff may recover…. But brief seizures are seizures all the same." *Torres*, 141 S. Ct. at 999.

Not all touches by officers rise to the level of seizures under the Fourth Amendment, of course, but sexual assaults do. The Fourth Amendment protects the "right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. Const. amend. IV. It is "the only part of the Constitution directly addressing seizures of the person by police." *Gumz v. Morrissette*, 772 F.2d 1395, 1404 (7th Cir. 1985)

(Easterbrook, J., concurring). Sexual assault intrudes into bodily security and is quite literally a "seizure," restricting freedom of movement even if briefly. An officer who sexually assaults someone while acting under color of law has seized the victim for Fourth Amendment purposes.

Hess has also plausibly alleged a seizure in another way. A person is seized if, considering the totality of the circumstances, a reasonable person in the situation would not feel free to leave. *Carlson*, 621 F.3d at 618; see also *Mendenhall*, 446 U.S. at 554. Late in the evening, Garcia drove Hess to a secluded area where he met another male police officer and asked him repeatedly if he wanted to have sex with Hess. It is plausible that a reasonable person in this situation would not feel free to leave. Similarly, Hess alleges that Garcia groped her buttocks after he instructed her to stand in front of him in a gas station line. Hess notes that the station was in "a bad area," and it is plausible that a reasonable person would not feel free to walk away from Garcia, who provided her transportation. Garcia made the point repeatedly in briefing and at oral argument that Hess never asked to end the ride along. There is no requirement that a person ask whether she is free to leave before a seizure can occur. E.g., *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010) ("whether a person asks permission to leave is but one factor among many in the arrest analysis").

Because Hess plausibly alleged that a seizure occurred, we consider whether she plausibly alleged that the seizure was unreasonable. To assess reasonableness, we look to the governmental purpose served by the challenged conduct, "balancing the need to search [or seize] against the invasion which the search [or seizure] entails." *Terry*, 392 U.S. at 21, quoting *Camara*, 387 U.S. at 534–35, 536–37. Even when challenged

conduct promotes a governmental interest, the Supreme Court cautions that searches and seizures must not be undertaken lightly. "Even a limited search of the outer clothing for weapons [to protect officer safety] constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Id.* at 24–25. Sexually motivated groping is an even more severe intrusion upon personal security.

No governmental interest is served by a state actor sexually assaulting anyone. We agree with Judge Loken: "there is nothing inappropriate or unusual in imposing virtually *per se* Fourth Amendment liability on police officers who misuse their power to arrest or otherwise seize a person by committing sexual assaults." *Rogers*, 152 F.3d at 801 (Loken, J., concurring in part, dissenting in part). Hess plausibly alleged that an unreasonable seizure occurred.

D. *Substantive Due Process*

The district court also found that Hess's complaint failed to allege a plausible claim under the Due Process Clause of the Fourteenth Amendment. *Z.H.*, 2022 WL 857035, at *3–5. We also reverse dismissal on this ground. Our precedents have recognized a substantive due process right against sexual assault by state actors in cases where no search or seizure occurred. See *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003); *Wudtke*, 128 F.3d at 1063.

In response to these precedents, Garcia asks us to draw lines between sexual assault that is unconstitutional and sexual assault that, in his view, is not severe enough to implicate the Constitution. We decline to do so.

Before digging into the substantive due process jurisprudence, we acknowledge that the Fourth Amendment will often provide the proper avenue for litigating a claim of sexual assault by an official acting under color of law. When "the Fourth Amendment provides an explicit textual source of constitutional protection against [a particular] sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court has even noted that *Rochin v. California*, 342 U.S. 165 (1952), which formulated the "shocks the conscience" test in substantive due process law that we discuss below, was decided before the Court held that the Fourth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment, and that the *Rochin* stomach-pumping case "today would be treated under the Fourth Amendment, albeit with the same result." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 n.9 (1988). At the same time, as a panel of this court, we also follow circuit precedents recognizing a substantive due process theory in cases of sexual assault under color of law.

Further, the Fourth Amendment is triggered only by a search or seizure. Substantive due process under the Fourteenth Amendment still protects people from unconstitutional conduct committed under color of law when neither a search nor seizure occurs. The Supreme Court has cautioned that *Graham* "does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision … the claim must be analyzed under the standard appropriate to that specific

provision, not under the rubric of substantive due process." *Lewis*, 523 U.S. at 833, quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Substantive due process may apply when, "outside the context of a seizure, … a person [is] injured as a result of police misconduct." *Id.* at 844 (giving example of a due process claim existing if an officer crashes into and injures a person outside the context of that officer attempting a seizure).

Hess has alleged that Garcia seized her, but Garcia has disputed those allegations. At this stage of the case, we will not restrict Hess to a Fourth Amendment theory if her complaint also pleads facts that set out a plausible Fourteenth Amendment substantive due process theory. It does so.

The Due Process Clause is violated by an infringement of a fundamental right through an abuse of government power that "'shock[s] the conscience' of federal judges." *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992), quoting *Rochin*, 342 U.S. at 172; see also *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). Case law has established a fundamental right to bodily integrity that includes the right to be free from sexual assault. See *Wudtke*, 128 F.3d at 1062 ("Her liberty claim of a right to bodily integrity is … the type of claim that has often been recognized as within substantive due process."). *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), did not mention or undermine the right to bodily integrity. In fact, the Court's opinion emphasized twice that "[n]othing in this opinion should be understood to cast doubt on precedents that do not concern abortion.… It is hard to see how we could be clearer." *Id.* at 2277–78, 2280. Rather, *Dobbs* refused to recognize "the right to an abortion" under the Due Process Clause and said that substantive due process must be "guided

by the history and tradition that map the essential components of our Nation's concept of ordered liberty." *Id.* at 2242, 2248. The right to bodily integrity (also referred to as "personal security") has long been recognized in law, including by Blackstone, who traced the right to the Magna Carta. 1 William Blackstone, Commentaries *123–25 (citing the Magna Carta in listing absolute rights including "the right of personal security" and "the right of personal liberty").[8]

The Supreme Court explains how to analyze whether an action shocks the conscience by focusing on "tort law's spectrum of culpability." *Lewis*, 523 U.S. at 848. That spectrum spans different degrees of *intent*, not different degrees of *harm*. *Id.* at 849. Illustrating this point, the Supreme Court found no conscience-shocking conduct where an officer unintentionally killed a motorist during a chase, *id.* at 836, while it found conscience-shocking conduct where officers intentionally had medical professionals induce vomiting in a suspect to retrieve evidence, *Rochin*, 342 U.S. at 166, 173. The nature or extent of the harm was not the Court's focus. Accord, *Jackson v. Indian*

---

[8] The Supreme Court has long recognized the right to bodily integrity as an essential component of our liberty protected by the Fourteenth Amendment's due process clause. See *Vacco v. Quill*, 521 U.S. 793, 807 (1997) (noting the right to refuse medical treatment is grounded in "well established, traditional rights to bodily integrity and freedom from unwanted touching"); see also *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 269 (1990) ("Before the turn of the century, this Court observed that 'no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.'"), quoting *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891) ("The right to one's person may be said to be a right of complete immunity: to be let alone.") (citation omitted).

*Prairie School Dist. 204*, 653 F.3d 647, 655 (7th Cir. 2011) (noting action intended to injure is most likely to rise to level of conscience-shocking); *Wudtke,* 128 F.3d at 1063–64 (reversing dismissal of claim alleging sexual assault because though "merely negligent action by the state official would not be enough for a substantive due process claim … [the alleged facts] amount to far more than negligence").

The alleged sexual assaults here were intentional, so regardless of whether they were severe, they would fall toward the worse end of the culpability spectrum, which is concerned with intent, not with the degree of harm caused by the behavior at issue. Sexual assault invades bodily integrity and cannot serve a governmental purpose. An officer's sexual assault while acting under color of law is conscience-shocking.

The district court disagreed. It focused on the level of harm that it assumed Garcia's conduct caused, noting that "[v]ery serious batteries, such as rape and egregious sexual conduct, have been held as conscience-shocking," but that Garcia's conduct was "not as severe" as that in other cases of officer sexual abuse and thus "did not rise to the level necessary" to violate the right to bodily integrity. *Z.H.*, 2022 WL 857035, at *3–4.

With respect, we disagree with this attempt to draw a line between constitutional and unconstitutional sexual assaults. The court's inquiry into whether the sexual assault was "serious" enough to be conscience-shocking reads too much into the use of that word in *Alexander*. 329 F.3d at 916. There, a woman argued that officers violated her right to bodily integrity by threatening her with 40 years of prison time unless she agreed to wear a wire while exchanging sex for money. *Id.* at 914–15. In analyzing her claim, this court noted that the right

to bodily integrity "is infringed by a serious, as distinct from a nominal or trivial, battery," and that rape "is not only a battery, but a very serious battery, and a rape committed under color of state law is therefore actionable" as a due process violation. *Id.* at 916 (citations omitted). *Alexander* did not say that some sexual assault is "nominal or trivial" or anything further about which batteries are serious or not. *Alexander* did not set the floor for a sexual battery qualifying as "serious" at rape and did not alter the Supreme Court's instruction that shocks-the-conscience analysis focus on the spectrum of intent balanced against relevant governmental interest.[9]

The most egregious examples of an offense do not change the floor for what conduct is criminal or unconstitutional. The right to bodily integrity is not made harder to violate by the fact that even worse cases come along, such as where an

---

[9] This district court case was not the first in this circuit to dismiss sexually abusive official conduct as falling below some unclear bar of egregiousness. In *Decker v. Tinnel*, the court found that an officer's sexual assaults of his ride-along passenger did not shock the conscience. No. 2:04-CV-227, 2005 WL 3501705 (N.D. Ind. Dec. 20, 2005). There, the officer asked his young ride-along passenger if she would strip for him, forcibly kissed her multiple times trying to "stick[] his tongue down [her] throat," "forced his hand between her closed thighs," and grabbed her breasts. *Id.* at *1–2. The court reasoned the conduct was not "serious" enough to implicate the Due Process Clause because "each touching or kissing incident lasted only a matter of seconds, and concluded when Decker either pushed Tinnel away, or told him 'no.'" *Id.* at *7–9. The Third Circuit cited this case and was "not persuaded" by its reasoning that an intentional intrusion into bodily integrity was not "serious" enough to be conscience-shocking. *Kane v. Barger*, 902 F.3d 185, 193–94 (3d Cir. 2018) (finding officer's behavior conscience-shocking where he "acted for his own personal gratification … in both touching Kane and photographing her intimate bodily areas"). We are similarly unpersuaded.

officer present during a sexual assault victim's hospital exam-
ination coerced her into going to a private room and removing
her clothing while he touched her and photographed her gen-
italia on his personal phone, *Kane*, 902 F.3d at 189–90, where
an officer sent to a woman's house for a wellness check forced
her to strip and touch her own genitalia while he mastur-
bated, *Tyson*, 42 F.4th at 512, 514, or where an officer sexually
assaulted a woman in her home after seeing her address on
her driver's license during a traffic stop, *Stidham v. Jackson*,
No. 2:07cv00028, 2009 WL 792961, at *1–3 (W.D. Va. Mar. 24,
2009). These cases and the one before us today differ factually
and may differ in terms of severity and appropriate damages
if liability is proven, but they all involve the alleged violation
of bodily integrity through conscience-shocking official ac-
tion.

We decline to recognize a category of constitutionally per-
missible sexual assault by a public official. An officer acting
under color of law does not avoid violating the Constitution
by sexually assaulting a member of the public but stopping
short of rape or use of force at the level federal judges might
consider extreme. Otherwise, line drawing would be impos-
sible. We asked counsel for Garcia where this line should be
and received no answer except that wherever the line is for a
sexual assault to qualify as a violation of bodily integrity, that
line required worse conduct than Garcia's. We will not engage
in such line drawing. Accord, *Tyson*, 42 F.4th at 520 (denying
qualified immunity and rejecting argument that lack of force
defeated claim: "No degree of physical sexual abuse effected
for a law enforcement officer's sexual gratification is justified
by a legitimate governmental objective …. [P]hysical sexual

abuse by a state official offends the Constitution. No reasonable officer could believe otherwise.") (citations omitted).[10]

Where, as here, a plaintiff plausibly alleges sexual assault by a public official acting under color of law, that plaintiff has stated a claim for a violation of her right to bodily integrity protected under the Fourteenth Amendment. Such conduct shocks the conscience because it is intentional and serves no governmental purpose.

### E. *Claims Against Chief Doughty*

We affirm the dismissal with prejudice of all claims against Chief Doughty. In Section 1983 suits, officials are held accountable only for their own misconduct. *Kemp v. Fulton County*, 27 F.4th 491, 497–98 (7th Cir. 2022); see also *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). To claim personal liability against a supervisor for a supervisee's conduct, a plaintiff must plausibly allege that the supervisor played some role in

---

[10] See also *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) ("it is 'obvious' that a juvenile corrections officer should not sexually harass or abuse a juvenile ward as [such conduct] is always wrong"); *Johnson*, 664 F.3d at 239 ("[I]t [is] clearly established in this circuit that the commission of a sexual assault by a government official acting under color of law constitutes a violation of due process that shocks the conscience."); *Fontana*, 262 F.3d at 875, 882 n.8 (reversing dismissal of claim based on officer sexually harassing arrested woman in back of squad car on the way to booking and noting that no qualified immunity would apply because the conduct was inherently wrong); *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 727 (3d Cir. 1989) ("sexual molestation of a student could not possibly be deemed an acceptable practice … [so] a student's right to be free from such molestation may be viewed as clearly established even before" relevant 1977 Supreme Court precedent).

the conduct through facilitation, approval, or turning "a blind eye for fear of what they might see." *Id.* at 498, quoting *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

This complaint alleges that Chief Doughty "permitted" the ride along while knowing another officer had accused Garcia of acting inappropriately "with females." In briefing before the district court, Hess clarified that by "permitted," the complaint meant that Chief Doughty "failed to issue an order prohibiting Officer Garcia from having female ride alongs." These allegations do not plausibly allege that Chief Doughty played a role at the level required to impose personal liability. Further, Hess has not identified any amendments she could make to the complaint to cure the problem, so the district court correctly dismissed the claim against Chief Doughty with prejudice.

To sum up, Hess's complaint plausibly alleges claims under the Fourteenth Amendment Equal Protection Clause, the Fourth Amendment, and the Fourteenth Amendment Due Process Clause. On a final note, counsel for Garcia said at oral argument that reversing dismissal would open proverbial floodgates and that this is not the kind of case federal courts want to hear "every time that incidents such as these" occur involving conduct "as frankly innocuous" as Garcia's. We disagree with the premise. We will not close the federal courthouse doors to people sexually assaulted by government officials acting under color of law. The dismissal of plaintiff's claims against Chief Doughty is AFFIRMED. The dismissal of her claims against Officer Garcia is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.

EASTERBROOK, *Circuit Judge* concurring. I concur in the judgment and join all but Part II.D of the court's opinion.

Part II.D states that sexual assault by a police officer may be condemned under "substantive due process." At least two decisions in this circuit say this. *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003); *Wudtke v. Davel*, 128 F.3d 1057, 1062–63 (7th Cir. 1997). Defendants have not asked us to overrule them. Given the principle of party presentation, see *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020), I would stop there. My colleagues continue, however, with language favorable to those holdings.

I find them (and equivalent decisions in other circuits) hard to reconcile with *Graham v. Connor*, 490 U.S. 386, 395 (1989), which holds that, when the Fourth Amendment supplies "an explicit textual source of constitutional protection against [a particular] sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." See also *Sacramento v. Lewis*, 523 U.S. 833, 849 n.9 (1998). My colleagues acknowledge those decisions but believe that we are bound by *Alexander* and *Wudtke*. Yet neither *Alexander* nor *Wudtke* mentions *Graham*, and we are supposed to follow the Justices when there is a conflict. Part II.C of today's opinion holds, correctly, that the Fourth Amendment supplies an appropriate means to analyze Officer Garcia's conduct. It follows that substantive due process does not.

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), reiterated that substantive due process is limited to a few "fundamental" rights with strong historical provenance but no other constitutional footing. *Alexander* and

*Wudtke* treat "bodily integrity" as the qualifying "fundamental" right, but this takes us back to *Graham*. The Fourth Amendment reads directly on bodily integrity, and *Graham* tells us that the rules that Amendment supplies for searches and seizures cannot be avoided by invoking substantive due process. Like the panels in *Alexander* and *Wudtke*, the dissenting Justices in *Dobbs* contended that bodily integrity is a fundamental right that receives protection through substantive due process. 142 S. Ct. at 2319, 2322, 2328 (Breyer, J., dissenting). The majority in *Dobbs* was not persuaded, and that decision binds us.

One norm under the Fourth Amendment is that courts evaluate reasonableness objectively. See, e.g., *Torres v. Madrid*, 141 S. Ct. 989 (2021); *Whren v. United States*, 517 U.S. 806 (1996). It does not matter what the police think or intend nor what the private party believes. Move to substantive due process, though, and we ask whether conduct shocks the conscience. Whether the conscience involved is that of a judge, a juror, an officer, or a private party, the inquiry is subjective. And whether conduct shocks a particular conscience lacks historical provenance as a legal standard. This approach was created by the Supreme Court from whole cloth in the Twentieth Century, long after the Due Process Clauses were proposed and ratified.

If the Supreme Court had held that substantive due process provides the right way to analyze offensive physical touching or threats of rape in remote locations that amount to seizures, that would be that. *Dobbs* insisted that it was not disturbing any line of decisions, other than holdings about abortion. But *Graham* shows that by 1989 it was established that substantive due process is *not* the way to analyze Hess's

contentions. *Graham* was all about bodily injury inflicted both directly and indirectly by officers' misconduct, so bodily integrity cannot be an escape hatch out of *Graham*'s purview. Police are accountable for objectively unreasonable searches and seizures, but they are not liable just because jurors are disgusted by an officer's loutish behavior.